No. 24,154.

THOMAS LEROY CHAFFEE et al., *Appellees*, v. (CHARLES CHAFFEE, *Appellee*), WANEDO CHAFFEE KAUFMAN, WALTER M. NEWMAN et al., *Appellants*.

SYLLABUS BY THE COURT.

1. WILL—*Action to Set Aside—Mental Incapacity of Testator—Competent Witness.* The rule which prevents a person from attacking the validity of a will when he has accepted and has not returned a partial distribution of property pursuant to its terms, does not render such person incompetent as a witness to testify on behalf of parties who have a lawful right to contest the validity of the will.

2. SAME—*Incapacity of Testator—Evidence of Physicians.* Objections to the testimony of a physician touching the mental incompetency of a testator, when such physician's information was acquired through his professional attendance on the testator, is waived when the defendant who objects to such testimony introduces as witnesses on his own behalf other physicians who similarly acquired their information and who likewise testify as to the mental capacity of the testator.

Appeal from Rush district court; ROSCOE H. WILSON, judge. Opinion filed April 7, 1923. Affirmed.

*J. E. Andrews, J. W. McCormick,* both of LaCrosse, and *Harry Brice,* of Cimarron, for the appellants.

*F. L. Martin, John M. Martin,* and *James N. Farley,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by the grandchildren of the late Samuel Chaffee, of Rush county, to set aside his will.

The defendants were Charles Chaffee and Wanedo Chaffee Kaufman, son and daughter of Samuel; also the executor, and a lodge of Odd Fellows to which the will gave a bequest of a thousand dollars.

The will made no mention of the plaintiffs, who were the children of a son of Samuel, who died in 1893. The plaintiffs alleged that when the will was made, about eighteen days before the death of Samuel, the testator was about 92 years of age, feeble, sick, senile, and incompetent to make a will. They also alleged undue influence.

The answer of Charles admitted that the testator was not of sound and disposing mind when the will was made and for long prior thereto, and that he was not competent to make a will.

The answers of the other defendants were general denials.

There was plenty of testimony pro and con, so that the issues of fact might have been determined either way.

An advisory jury specially found that when the will was signed Samuel was not of sound and disposing mind, and that he was under undue influence at the time he signed it. On motion of some of the defendants the trial court refused to set aside the first finding but did set aside the second; and made findings of its own—

"1. That Samuel Chaffee did not have sufficient mental capacity to make a will at the time the will in question was executed.

"2. That no undue influence was exercised on Samuel Chaffee at the time of the making of the will."

Judgment was accordingly entered, setting aside the will. Some of the defendants appeal.

The first error urged relates to the admission of the testimony of Charles Chaffee. It seems that the executor had made a partial distribution under the will before this action began or before it was tried, and that Charles had received his portion of such distribution. Because of this, it is argued that he was an incompetent witness. While there is a rule of law that a party who takes under a will cannot attack the will without first surrendering whatever he has received under it, yet such rule is inapplicable here. It was the grandchildren who are entitled to their deceased father's share of Samuel's estate who were attacking this will. They were under no handicap to prove the allegations of their petition by whatever wit-

nesses, willing or unwilling, they could summon into court. The fact that Charles did not deny the truth of their allegations did not disqualify him. The fact that he has received a portion under the will did not render his testimony incompetent to prove the case for the grandchildren. While Charles could not without first surrendering his devise or bequest be heard to initiate an attack on the will, and while he may yet have to account for what he has received under it, his testimony was competent. We note that in Charles' answer he prayed that the will be set aside and that he be given his portion as heir. But the judgment was entered as prayed for by plaintiffs, not in response to the prayer of Charles, although it obviously suited him just as well as if judgment had been specifically entered for him according to his prayer.

The next error urged relates to the admission in evidence of the testimony of two doctors and a nurse who had professionally treated and cared for Samuel. It does not appear in the abstract that the testimony of Dr. Roberts or the testimony of the nurse was objected to. As to the testimony of Dr. Welch, which may be conceded to have been incompetent unless waived (*Bruington v. Wagoner*, 100 Kan. 10, 164 Pac. 1057), we have to notice that much of his testimony was admitted without objection, yet the specific question whether the testator was or was not of sound mind was objected to as a privileged communication, and this objection was overruled. We note also that this witness was cross-examined at length, nor was such cross-examination restricted to the matters developed on the direct examination. That cross-examination, however, might be a rather narrow ground on which to base a waiver of the privilege in this case; but the defendants called two physicians who had professionally attended the testator up to the time of his death, and they too testified as to his mental condition. Their testimony was favorable to defendants. Without doubt, therefore, the privileged nature of the testimony of Dr. Welch was waived, when the defendants introduced testimony of other doctors, of the same privileged character, in their own behalf.

This renders it unnecessary to decide whether a waiver of the privilege by all the heirs of the deceased testator is requisite before the confidential information of an attending physician can be disclosed. Of course, the lodge of Odd Fellows could not be heard to complain of the evidence, nor is it clear that the executor could complain. The privilege is granted by the statute in deference to

Rathbone v. Railway Co.

the private feelings of the patient, and in deference to the sensibilities of the members of his family who are his heirs at law. Other litigants have no concern in the supposed indelicacy of exposing such private matters to public hearing.

Appellee says that none of the heirs are here complaining, but it seems that Wanedo, the daughter, is at least nominally an appellant; but be that as it may, the foregoing completely disposes of the only assigned errors worthy of discussion; and the result here reached renders it unnecessary to consider the cross appeal of appellees. on the question whether a lodge of Odd Fellows had capacity to take the particular bequest devised to it.

The record contains no error and the judgment is affirmed.