[No. 21958. Department Two. September 4, 1929.]

*In the Matter of the Estate of* MARY ENTZ UZAFOVAGE, *Deceased.*[1]

*Rex S. Roudebush,* for appellant.

*Hugo Metzler,* for respondents.

MAIN, J.—This is a controversy over whether certain securities should be inventoried as a part of the estate of Mary Entz Uzafovage, deceased.

Mrs. Uzafovage died in the city of Tacoma, September 6, 1927, at the age of eighty-three years. She left surviving her, as her sole heirs, a son, C. Ed. Uzafovage, who was married and for many years had resided

[1] Reported in 280 Pac. 85.

in the state of California, and two daughters, A. Louise Uzafovage and Alma Entz Uzafovage, both of whom were unmarried and who had continuously resided with their mother up to the time of her death.

During the life of Mrs. Uzafovage, she and the two daughters jointly had a safe deposit box in the National Bank of Tacoma in which they kept their securities. After the death of Mrs. Uzafovage, the National Bank of Tacoma was appointed administrator of her estate. The inventory subsequently prepared and filed showed $18,231 of securities belonging to the estate. After the bank was appointed administrator, and after listing the securities just mentioned, the trust officer of the bank visited the safe deposit box with one or both of the daughters and looked over the remaining securities therein, which amounted to something over $60,000. Believing these securities to be the property of the daughters, and not the mother, they were not listed in the inventory of the estate of the deceased. The hearing on the administrator's final report occurred June 11, 1928. At this time, the son returned from California and was present at the hearing, as were his sisters. None of the parties were represented by counsel, and the hearing was somewhat informal. The son raised some question because an automobile and certain household goods did not appear in the inventory, and also some question as to the securities not inventoried. The result was that the court entered an order directing the administrator, in the presence of the parties, to cause the safe deposit box to be opened and make a list of the securities therein. This was done, the box being opened and the list of securities being made June 26, 1928, in the presence of all the parties and their respective attorneys.

After this, the bank, as administrator, filed a petition setting out that the safe deposit box had been

opened and the contents thereof listed. The petition also recited that a difference had arisen between the daughters and the son as to the ownership of the contents of the box, and asked the court to require the parties to appear on a day certain and set forth the nature of their several claims. As a result of this petition, a citation was issued, directed to the daughters and to the son. In response to this, the daughters filed an answer to the petition of the bank in which they claimed that the securities in the box, of the value of $68,025, were their individual property, and asked the court to so adjudge. The son filed a petition in which he claimed that the securities in dispute were the property of the estate of his mother, and asked the court that the administrator be required to inventory them as such. The matter came on for hearing on October 5, 1928. At this time, C. Ed. Uzafovage, the son, assumed the burden of showing that the property in question was that of the estate of his mother. He called witnesses to prove the allegations of his petition. At the conclusion of the testimony offered in support of the petition, the two daughters moved for a nonsuit, because they claimed that the evidence did not make a *prima facie* showing that the securities in dispute belonged to the estate, but, on the other hand, showed that they were their individual property. Thereupon the court entered an order adjudging that the securities in controversy were not the property of the estate, but the individual property of Alma Entz Uzafovage and A. Louise Uzafovage. From this order, the brother, C. Ed. Uzafovage, appeals.

It is first claimed that this was a discovery proceeding, and that the court erred in trying title to the property. The answer to this is that, by the petition of the bank, the answer thereto by the daughters, and the petition of the appellant, the title to the prop-

erty was put in issue. To determine that was the purpose for which the parties came into court. There was no occasion for a discovery proceeding, because, prior to the time the bank filed its petition, the safe deposit box had been opened and the property listed. We know of no legal reason why, in the probate proceeding, when the parties come into court without objection and submit the title to certain specific property to it for adjudication, the court may not determine the ownership thereof.

It is further contended that the court erred in holding that the appellant had not made a *prima facie* showing of ownership of the securities in the estate sufficient to cast the burden upon the respondents and require them to produce their proof. There is no question about the rule, stated in the texts and announced in the adjudicated cases, to the effect that, where confidential relations exist between two persons and a business transaction takes place between them, resulting in a benefit to the person holding the influential position, the law presumes everything against the transaction and casts the burden of proof upon the person benefited to show that, as to that transaction at least, it was as fairly conducted as between strangers. It will be admitted that, as between the mother, during the lifetime, and the daughters, there was confidential relation. There is, however, no evidence from which it can be inferred that any transaction took place between the mother and the daughters with reference to the securities in question. Neither is there any evidence from which it can be inferred that the daughters, or either of them, at any time, commingled trust funds with their individual property. Up to the time of her death, Mrs. Uzafovage either transacted her own business, or, under her direction, one of the daughters did it for her. As above stated, they had

the joint use of a safe deposit box. The contract for the use of this box appears on a card similar to those generally used for such purposes. According to the card, A. Louise Uzafovage and Alma E. Uzafovage signed the contract. At the left, under the heading "Joint Tenants' Appointment of Deputies," appears the name of the mother, Mary Entz Uzafovage. It cannot be said that this safe deposit box belonged to the mother any more than to the daughters.

The mother kept a savings account in the National Bank of Tacoma in her own name. The daughters kept their savings account separate and distinct from that of the mother. When a bond was purchased by the mother, the money was taken from her account and the bond paid for. When she sold a bond, the money was either reinvested in another bond or deposited in her account. The same is true when the daughters purchased bonds. The mother, as did the daughters, kept a bond record book. In the book of the mother, were listed her bonds. In the book of the daughters, were listed their bonds. The bonds in controversy were not listed in the mother's book. It is said that these were loose leaf books and that it would be easy to remove a leaf and substitute another. This is true, but there is no evidence that such had been done.

Upon the trial, the appellant testified that, shortly after his father's death, which occurred in 1910, his mother had stated to him that she had an income of something like six or seven hundred dollars a month from bonds, and from this it is argued that the $68,000 worth of securities found in the box at the time this controversy arose belonged to the estate. This was testimony as to something that a deceased person had said approximately eighteen years before, and is such testimony as courts scrutinize with care. Giving the testimony, however, its full probative force, it does

not follow, as a natural sequence, that the securities in controversy were acquired by the mother during her lifetime and were therefore a part of her estate. In any view of the situation, this testimony must be taken into consideration with all the other evidence, and, when so considered, it is plain that, upon the hearing, the appellant did not make a *prima facie* showing that the securities in controversy were the property of the estate of his deceased mother.

The judgment will be affirmed.

HOLCOMB, PARKER, MILLARD, and FRENCH, JJ., concur.