[No. 22633. Department Two. April 1, 1931.]

*In the Matter of the Estate of* WILLIAM QUICK, *Deceased.*[1]

[1]Reported in 297 Pac. 198.

538

*Joseph A. Albi* and *O. C. Moore,* for appellant.

*Robertson & Paine,* for respondents Lyons *et al.*

*Milton S. Hanauer,* for respondent Old National Bank & Union Trust Co.

MILLARD, J.—This is a controversy between the two children of William Quick, deceased, and the children's stepmother (Quick's second wife), as to the proper distribution of the estate acquired by the decedent prior to his second marriage. The court found that the several items of property claimed by the second wife, Isabella Quick, as gifts to her from her husband prior to his death, belonged to the estate. Judgment was entered charging against Mrs. Quick's distributive share of the estate the funds and other property held and claimed by her. Mrs. Quick has appealed.

The appellant is the surviving wife of William Quick, deceased, to whom she was married in July, 1926. By a former marriage, William Quick had two children, respondents Florence May Lyons and George Quick. In the fall of 1927, the decedent suffered an attack of influenza, and a second attack of the same disease early in 1928. About March 1st, 1928, he was stricken with paralysis, the stroke affecting his right

side and rendering his right arm useless. He was very feeble from the time of the stroke until his death in Spokane, April 16, 1929, and required constant attendance and nursing. On May 28, 1928, he executed a will by which he bequeathed his estate in equal shares to his two children and his wife, the latter being nominated as his executrix.

After his illness, all of the decedent's business transactions, including the making of deposits in banks of his funds, and the withdrawal of same by check or otherwise, were handled by his wife—she was his business manager. During this period, the wife gained possession of shares of stock and large sums of money of the decedent. The appellant paid out of the funds so obtained approximately thirty-one hundred dollars for paid-up life insurance in her favor. One witness testified that appellant said, less than two weeks before the death of Mr. Quick, "she hoped he would live a few months longer, that there would be no will to divide."

The court's findings of fact, substantially as follows, are amply sustained by the evidence: Within a period of several months prior to his death, and during the sickness and incapacity of William Quick, the appellant procured from him the funds and property described in the petition of respondent. Quick was not competent to attend to his business, even though at times he was rational in mind and to the extent of recognizing his friends and understanding what was going on about him. At other times, his mind was clouded, and he was not conscious either as to where he was, or to whom he was talking; that his mind was somewhat affected by his illness. The funds and other property were not obtained by the appellant as gifts from the decedent. She obtained same through the exercise of undue influence over him and by virtue of the position of trust and confidence which she occu-

pied towards him and his physical and mental incapacity to transact and conduct his own affairs.

■ Citing as supporting authority *State ex rel. Wolfe v. Superior Court,* 139 Wash. 102, 245 Pac. 764, and *In re Robinson's Estate,* 142 Wash. 552, 253 Pac. 816, appellant contends this was a discovery proceeding and that the court did not have jurisdiction to determine the title to the property in controversy; that the administrator was a necessary, an indispensable, party plaintiff; that, while the administrator was physically present by its attorney in court, such mere corporal presence does not constitute appearance; that "the defendant appears in an action when he answers, demurs, makes any application for an order therein, or gives plaintiff written notice of his appearance." Rem. Comp. Stat., § 241.

When the will was filed for probate the appellant refused to act as executrix. The Old National Bank and Union Trust Company was designated in her stead, M. S. Hanauer acting as attorney for the administrator.

On May 22, 1929, the respondents filed in the superior court their petition, alleging their interest under the will, the appointment of the trust company as administrator with the will annexed, and possession and control by appellant of property belonging to, and which should be accounted for as property of the estate. Upon that petition, an order was entered that the appellant and the administrator appear and answer in open court all interrogatories propounded respecting such property; and further ordered that such other testimony be taken at that hearing as the court deemed expedient. Service was had of a copy of the petition and of the court's order upon both the appellant and the administrator.

The appellant answered, and alleged that the funds

and other property described in the petition, and all of the property of the estate, were given to her by William Quick during his life time; and prayed that she be adjudged the owner thereof. The respondents' reply denied that the property was given by the decedent to the appellant, and alleged that possession by the appellant was obtained by the exercise of undue influence by her over William Quick.

The administrator did not in writing or orally plead. The administrator's cashier was present the first day of the hearing and subject to call the remainder of the hearing, as a witness when needed. Counsel for the administrator was present during the hearing, at the close of which he filed a written motion for judgment in accordance with the court's memorandum decision.

The trial was conducted by the real parties in interest, the appellant and the respondents, as a hearing upon the merits for the determination of the ownership of all of the property in controversy. No objection was made by the then attorney of the appellant to the proceeding as one for the proper distribution of the property and of the determination of the controversy between the parties.

Following the court's announcement of its decision, new counsel appeared for appellant, and contended that the court could not determine the title to the property in controversy. The court said:

"It appears from the files that both Mrs. Quick and the administrator were duly served with the citation; that thereafter Mrs. Quick appeared generally in the proceeding by answer and cross-complaint to the petition, and that the administrator by its attorney appeared at the first hearing had upon the petition and at all subsequent hearings thereon.

"Mrs. Quick raised no question as to the regularity of the proceeding or as to the jurisdiction of the court, and on the other hand, by her cross-complaint invited the court to adjudicate the title to the property which

it was claimed she was withholding. The administrator not only raised no objection to the regularity of the proceeding or jurisdiction of the court to hear and determine the title to the property as prayed for by Mrs. Quick in her cross-complaint, but now by its attorney has moved the court for the entry of a decree in accordance with its memorandum of opinion heretofore filed.

"We have here, then, a case in which the court, without question, had jurisdiction of the subject matter of the proceeding and in which all the parties, including the administrator with the will annexed, were not only consenting to but praying that the title to the property in controversy be adjudicated as between the estate and Isabella Quick. . . .

"The court has no doubt as to the correctness of its decision heretofore announced upon the merits of the controversy, and none of the parties interested in the subject of the litigation being in position to question the regularity of the proceeding, it would be highly technical and idle to set aside the proceedings already had and require the same tedious, laborious and expensive course to be gone over again."

We concur in the view of the trial court. The case at bar differs not in principle from *In re Uzafovage's Estate,* 153 Wash. 620, 280 Pac. 85. In that case, the controversy was between children of the decedent as to the ownership of certain securities contained in a safety deposit box. At the hearing on the administrator's final report, one of the children complained because certain property was not listed in the inventory of the estate of the deceased (the same question that was raised in the case at bar by respondents' petition). The court entered an order directing the administrator, in the presence of the parties, to open the deposit box and make a list of the securities. This was done. Thereafter, the administrator petitioned the court to require decedent's children to appear and set forth their claims. Pursuant to the court's order, the chil-

dren appeared and answered, reciting the nature of their claims. Hearing was had and the ownership of the property was determined in that proceeding. Answering appellant's contention, which was the same as the question raised in the case at bar, that the court was without jurisdiction to determine the title to the property in controversy in a discovery proceeding, we said:

"It is first claimed that this was a discovery proceeding, and that the court erred in trying title to the property. The answer to this is that, by the petition of the bank, the answer thereto by the daughters, and the petition of the appellant, the title to the property was put in issue. To determine that was the purpose for which the parties came into court. There was no occasion for a discovery proceeding, because, prior to the time the bank filed its petition, the safe deposit box had been opened and the property listed. We know of no legal reason why, in the probate proceeding, when the parties come into court without objection and submit the title to certain specific property to it for adjudication, the court may not determine the ownership thereof."

In the case at bar, the determination of the ownership of the property was the purpose for which the parties came into court. Appellant, by her answer, put the title to the property in issue. All of the parties (the appellant, the respondents, and the administrator) came into court without objection, and submitted the title to the property to the court for adjudication.

While the administrator filed no pleading, it was present by its attorney and consented to be bound by the judgment; in fact, it filed a written motion for the entering of the judgment of which appellant now complains. Consenting to the entry of the judgment was a general appearance by the administrator.

"A general appearance is also made . . . by consenting to the entry of judgment; . . ." 4 C. J., p. 1334.

In *State ex rel. Trickel v. Superior Court,* 52 Wash. 13, 100 Pac. 155, we held that the statutory (Rem. Comp. Stat., § 241) methods of appearance were not exclusive. We said:

"The very purpose of the code was to simplify the practice, and this can be best accomplished by looking at the substance, rather than the form, of matters requiring consideration. . . . In considering the question as to what constitutes an appearance, 3 Cyc., p. 504, par. 5, announces the following rule:

" 'Any action on the part of a defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance.'

"The Nevada court, in discussing the question as to whether the statutory methods of appearance are exclusive, in *Curtis v. McCullough,* 3 Nev. 202, 212-13, thus states the rule:  ·

" 'We cannot believe that the legislature intended to say that a defendant could not appear in an action except by filing an answer, demurrer, or giving written notice to the plaintiff. He certainly can in fact appear. We cannot therefore sanction the doctrine that he cannot appear so as to give the court jurisdiction of his person in any way except as specified in the section above referred to.' "

The administrator having moved for judgment, it is bound thereby. It cannot, at any future time, nor does it now, question the judgment entered.

*State ex rel. Wolfe v. Superior Court, supra,* is not in point. In that case citation was issued, ordering the relator to appear for examination. She made a special appearance, and moved to quash the citation, and, when the court announced its intention to try out the title to the property upon its merits, challenged the right to do so in the court below, and by her application for a writ of prohibition in this court. Had she

appeared in court without objection, as did the parties in the case at bar, and submitted the title to the property to the court for adjudication, the court could have determined the ownership thereof.

Neither is *In re Robinson's Estate, supra,* in point. All that is decided in that case is that the order directing the administrator of the estate to commence summary proceedings to uncover assets of the estate, is not appealable as a final order.

Appellant called as a witness one of the two physicians who attended the decedent during his last illness. That witness testified as to the mental condition of his patient. The other physician was called as a witness by the respondents later in the hearing, and he, too, testified, over objection of the appellant, as to the mental state of Mr. Quick.

Appellant insists that the court erred in permitting the second physician to testify as to information acquired by him through his professional attendance on Mr. Quick.

Conceding the testimony of the second physician was incompetent, appellant waived the error, which was not prejudicial. It does not appear that the court considered the testimony of the physician, and there is ample testimony to sustain the court's findings of fact, if that testimony were disregarded. On her own behalf, appellant first introduced as a witness one of Mr. Quick's two physicians. Both physicians acquired their information in the same manner—as attending physicians of Mr. Quick. Both testified as to the mental capacity of the testator.

In *Chaffee v. Kaufman,* 113 Kan. 254, 214 Pac. 618, the court held that objections to the testimony of a physician as to the mental incompetency of a testator, when such information was acquired through his pro-

fessional attendance on the testator, is waived when the defendant, who objects to such testimony, introduces as witnesses on his own behalf other physicians, who similarly acquired their information and who likewise testified as to the mental capacity of the testator. The court said:

"The next error urged relates to the admission in evidence of the testimony of two doctors and a nurse who had professionally treated and cared for Samuel. It does not appear in the abstract that the testimony of Dr. Roberts or the testimony of the nurse was objected to. As to the testimony of Dr. Welch, which may be conceded to have been incompetent unless waived (*Bruington v. Wagoner,* 100 Kan. 10, 164 Pac. 1057), we have to notice that much of his testimony was admitted without objection, yet the specific question whether the testator was or was not of sound mind was objected to as a privileged communication, and this objection was overruled. We note also that this witness was cross-examined at length, nor was such cross-examination restricted to the matters developed on the direct examination. That cross-examination, however, might be a rather narrow ground on which to base a waiver of the privilege in this case; but the defendants called two physicians who had professionally attended the testator up to the time of his death, and they too testified as to his mental condition. Their testimony was favorable to defendants. Without doubt, therefore, the privileged nature of the testimony of Dr. Welch was waived, when the defendants introduced testimony of other doctors of the same privileged character, in their own behalf.

"This renders it unnecessary to decide whether a waiver of the privilege by all the heirs of the deceased testator is requisite before the confidential information of an attending physician can be disclosed. Of course, the Lodge of Odd Fellows could not be heard to complain of the evidence, nor is it clear that the executor could complain. The privilege is granted by the statute in deference to the private feelings of the patient, and in deference to the sensibilities of the members of his family, who are his heirs at law. Other

litigants have no concern in the supposed indelicacy of exposing such private matters to public hearing." *Chaffee v. Kaufman,* 113 Kan. 254, 214 Pac. 618.

■ Appellant argues, also, that the court erred in permitting the administrator's attorney to testify, over objection, as to statements made to him by the decedent at the time of the transfer to the appellant of certain shares of stock.

A witness for appellant testified to a conversation in her presence, and in the presence of the attorney, the appellant, and Mr. Quick, as to the transfer of the shares of stock. The witness testified that Mr. Quick stated he desired to give the stock to Mrs. Quick, so that she might have it after he was gone. The attorney testified:

"He told me in substance that they needed the money for various purposes. I don't think he specified what the purposes were."

That was not a privileged communication between attorney and client.

"While we confess the sound and wise policy of the law in establishing the rule of privilege as between attorney and client it will not do to say that, because of such a relation, every act and communication between them, irrespective of its nature, is within the rule, and the relationship once being established all further inquiry must cease." *Collins v. Hoffman,* 62 Wash. 278, 113 Pac. 625.

It is patent that the communication was not confidential in view of its having been made in the presence of two third persons. In *Baumann v. Steingester,* 213 N. Y. 328, 107 N. E. 578, in which the same question was raised, it was held that, where a testatrix gave instructions to her attorney relative to her will in the presence of a third person, the communications were not confidential so as to be privileged, and it was error,

in an action to construe the will, to exclude the attorney's testimony as to such instructions. The court said:

"The testatrix, a woman about 70 years of age, called upon Mr. Kellar and gave him instructions as to the drawing of her will. With her on this occasion and present at the office of Mr. Keller at the time was Mrs. Stiefhold. Mrs. Stiefhold lived with the testatrix and acted as companion and housekeeper. The instructions as to her will were given to Mr. Kellar in the presence of Mrs. Stiefhold, who, while within hearing, testified that she 'did not pay very much attention.' When Mr. Kellar was called as a witness he was asked as to the instructions he had received from the testatrix as to the legacies and the provisions for the residuary estate. The question was excluded under objection of the plaintiff and subject to the exception of the appellant. It thus becomes necessary to determine whether Mr. Kellar, the attorney, should have been permitted to testify to communications which took place between himself and his client, the testatrix, in the presence of Mrs. Stiefhold. This evidence should have been received and considered by the court below. . . . Mrs. Stiefhold was not present and acting in the character of a confidential agent of the testatrix, nor was her presence necessary to enable the parties to communicate with each other. No attempt was made by the testatrix to prevent her hearing the communication which she made to her attorney. The fact that Mrs. Stiefhold did 'not pay very much attention' to what was said does not alter the situation. She was within hearing and, so far as the testatrix knew, heard all that was said. If the testatrix had desired her communication with her attorney to be confidential, she could have asked Mrs. Stiefhold to withdraw from the room or have communicated with her attorney when Mrs. Stiefhold was not present. She did not do either of these things, but on the contrary, gave her instructions to her attorney as to the manner in which she wished to have her will drawn, in the presence of Mrs. Stiefhold. The fact that these instructions were given in the presence and in the hearing of Mrs. Stiefhold is

a circumstance indicative of the fact that the communication was not made in confidence. A third person even though a mere stranger or bystander, in whose hearing communications are made by a client to an attorney, may testify to such communications. *Jackson v. French,* 3 Wend. 337, 20 Am. Dec. 699; *People v. Buchanan,* 145 N. Y. 1. To allow a stranger or bystander who overhears such a conversation to testify to what he heard and at the same time preclude the attorney of the client from giving his testimony as to what occurred might often result unfairly to the client for whose protection the privilege is designed. The communication not being confidential the attorney is not privileged from disclosing it. Where there is no confidence reposed, no privilege can be asserted. In such cases the attorney is permitted to testify not because the privilege has been waived, but because the communication, not having been made in confidence, was not privileged. The privilege which exempts one from giving testimony, except in so far as it is embodied in statutory provisions, cannot be extended to cover cases not within the reason upon which the privilege rests.''

A careful examination of the record failing to disclose reversible error, the judgment should be, and it is affirmed.

FULLERTON, MITCHELL, HOLCOMB, and BEALS, JJ., concur.