## FELDMAN INV. CO. et al. v. CONNECTICUT GENERAL LIFE INS. CO.

### No. 1215.

Circuit Court of Appeals, Tenth Circuit.

July 25, 1935.

J. J. Henderson, of Tulsa, Okl., for appellants.

Donald L. Brown and E. M. Calkin, both of Tulsa, Okl. (Chas. L. Yancey and G. C. Spillers, both of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The First National Building Company executed (1) its promissory note for $100,-000, dated June 26, 1930, payable to the Monarch Investment Company in stated installments of specified amounts, the first being for $1,000 due January 1, 1931, and (2) a mortgage to secure payment of the note covering certain premises situated in

Tulsa, Okl. The note and mortgage each provided that default in payment of any installment of either principal or interest when due should at the option of the holder mature the entire debt and the mortgage contained an additional provision that if the mortgagor failed to pay any taxes when due, the holder of the obligation should have the right to pay them and then declare the entire amount due in like manner. The note was transferred and the mortgage assigned to plaintiff on August 1, 1930.

Plaintiff instituted this action in conventional form alleging that default had been made in payment of principal and interest on the note, that the mortgagor had failed to pay certain taxes, that plaintiff had paid them, and that by reason of such facts it had elected to mature the full sum due on the note. First National Building Company, Feldman Investment Company, Jewish National Culture Alliance, each being a corporation, and others were joined as parties defendant with appropriate allegations that the last-named defendants claimed some right in the premises, but that they were inferior to the mortgage lien. Chancery subpœna issued and the marshal made return showing, among other things, that he served it upon the defendant Jewish National Culture Alliance by delivering a true copy thereof to Robt. Feldman, its president, and that he was the person having charge at the usual place of business of the corporation.

A motion for extension of time within which to plead or answer was filed. It purported to be the motion of the defendants Building Company, Investment Company, and Culture Alliance, and was signed by R. C. Scarcy as their attorney. Later a written stipulation was filed purporting to be that of plaintiff and the defendants just named in which all the allegations contained in the bill were confessed and providing that the Building Company should within ninety days pay all principal, interest, taxes, and insurance then due or to become due during the ninety-day period; that upon such payment the suit should be dismissed, but upon failure to make it plaintiff should be entitled to a decree as to such defendants in conformity with the prayer in the bill. Silverman, Rosenstein & Fist signed that stipulation for the three defendants named and it was approved by the court. Payment of the stated sums was not made within the speci-

fied time and a decree of foreclosure was entered. The court subsequently directed the clerk to issue a special execution and order of sale conforming to the decree. Thereafter the defendant Culture Alliance, acting through its attorney who appears in its behalf in this court, filed separate motions to set aside the decree and to recall the order of sale on the ground that it was the record owner of the property at the time the decree was entered; that no summons or other process had been served upon it; that it had not entered its appearance in the case nor authorized anyone to do so for it; and that accordingly the court was without jurisdiction to render the decree against it. It later filed a like motion to set aside the sale. Defendants Investment Company and Building Company moved to vacate the sale and to refuse to confirm it. They also interposed exceptions to the sale.

The court heard testimony upon the several motions and found that Feldman caused the defendant Culture Alliance to be organized; that he employed Searcy to render the necessary legal services in that connection; that the two of them together secured the charter; that Feldman had been in active charge of the premises sought to be foreclosed and employed the several attorneys named to represent the defendant; that the defendant had entered its general appearance in the case by the motion for an extension of time within which to plead or answer and by the stipulation, each of which was filed before entry of the decree, by the motion to set the decree aside and by the motion to vacate the sale; and that the attorneys who appeared for it at the respective stages of the proceedings were authorized to act in its behalf. The court thereupon inquired whether the defendant in question had a defense to the note and mortgage in suit and indicated clearly a willingness to vacate the decree if it did. The defendant contented itself with the reply that it was unnecessary to set up a defense. The motions to set the decree aside and to vacate the sale were then overruled and the sale was confirmed. The appeal is from that action.

 Whether the court had jurisdiction of the Culture Alliance is the first question presented for attention. Feldman was not its president and the return upon the subpoena was inaccurate in that respect. But an application for extension of time within which to plead and a stipulation confessing judgment if certain payments were not made within ninety days were each filed before the decree was rendered. The filing of an application or stipulation for an extension of time within which to answer or otherwise plead constitutes a general appearance. Hupfeld v. Automaton Piano Co. (C. C.) 66 F. 788; Murphy v. Herring-Hall-Marvin Safe Co. (C. C.) 184 F. 495; Hoyt v. Ogden Portland Cement Co. (C. C.) 185 F. 889; Placek v. American Life Ins. Co. (D. C.) 288 F. 987; Brookings State Bank v. Federal Reserve Bank (D. C.) 291 F. 659; Briggs v. Stroud (C. C.) 58 F. 717; Everett Ry., Light & Power Co. v. United States (D. C.) 236 F. 806; Holt v. Gaston County Dyeing Machine Co. (D. C.) 24 F.(2d) 598; Paramount Publix Corp. v. Boucher, 93 Mont. 340, 19 P.(2d) 223; Richards v. Goldstein, 124 Neb. 438, 246 N. W. 925. And the filing of an offer to confess judgment constitutes a like appearance. Maryland Casualty Co. v. Murdock State Bank, 76 Neb. 314, 107 N. W. 562; Thornhill v. Hargreaves, 76 Neb. 582, 107 N. W. 847; In re Quick's Estate, 161 Wash. 537, 297 P. 198. It is urged, however, that the respective attorneys who filed the application and the stipulation had no authority to act for the defendant in question. An appearance by a practicing attorney creates a presumption that he has authority to act and the law casts the burden of proving the contrary upon the one asserting it. Brown v. Arnold (C. C. A.) 131 F. 723; Aaron v. United States (C. C. A.) 155 F. 833; Hill v. Mendenhall, 21 Wall. 453, 22 L. Ed. 616; Bonnifield v. Thorp (D. C.) 71 F. 924; Jarrell v. Cole (C. C. A.) 215 F. 315, L. R. A. 1916E, 298; Cooper v. Jewett (C. C. A.) 233 F. 618; Drew v. Burley (D. C.) 287 F. 916; Kynerd v. McCarthy (C. C. A.) 3 F.(2d) 32.

There is testimony tending to show that Feldman is connected with the Investment Company and that he is president of the Building Company; that he caused the Culture Alliance to be organized; that he employed Searcy to render the necessary legal services in that connection; that the two of them went to Oklahoma City together and secured the charter; that he negotiated the sale of the building from the Building Company to the Culture Alliance; that no cash was paid in the transaction; that instead, the transfer was subject to the mortgage in suit with express

provision in the deed that the purchaser should not be personally liable for the debt and that a second mortgage of $150,000 was given, but never placed of record; that Feldman occupied offices in the building on the premises adjoining those of the Culture Alliance; that he had been in active management of the building for the Culture Alliance; that when some controversy arose with the plaintiff concerning the mortgage the president of the Culture Alliance authorized Feldman to adjust it: that on the day preceding the time within which to answer or plead in the case expired, Feldman went to the office of Searcy with three separate summons served upon him, including the one served upon him as president of the Culture Alliance, and stated that he was negotiating with plaintiff for a settlement; that he believed the negotiations would be completed within ninety days and desired a pleading filed which would stay the proceedings until that time. He did not specify whether the Culture Alliance should be included, but handed the three summons to the attorney with the general request that an answer or pleading be filed for "us" which would stay the proceedings. On the morning of a subsequent day when the case was set for trial, he went to the office of Silverman, Rosenstein & Fist and conferred with a member of the firm. He stated there that he had been engaged in an effort to negotiate a settlement and believed it could be adjusted if ninety days time were secured and requested that firm to represent "us" in securing such an extension, again failing to specify who were included in that expression. The secretary of the Culture Alliance also conferred with the attorney about a settlement. The attorney then went into court, noted that according to the records service had been obtained upon the three defendants named by serving Feldman, read the application for extension of time previously filed and signed the stipulation which was filed and approved by the court. We think these facts fall short of overcoming the presumption that the attorneys acted with authority. Instead, they tend to establish authority. Feldman was the manager of the building. The president of the corporation authorized him to settle the controversy with plaintiff. In his effort to do so, he requested the attorneys to secure additional time for that purpose and they acted under that request. Manifestly the finding of the trial court that they acted with authority is supported by the facts and is buttressed by the presumption of law referred to.

■ Apart from what has been said, the motion to set the decree aside and the motion to vacate the sale constituted a general appearance. While it was attempted to appear specially, seeking affirmative relief at the hands of the court in the manner and circumstances stated, constituted a general appearance and waived all question respecting the jurisdiction of the court over the person of the defendant at the time the decree was entered. American Gasoline Company v. Commerce Trust Co. (C. C. A.) 20 F.(2d) 46.

■ The sufficiency of the notice of sale is challenged upon the ground that it failed to fix definitely the place at which the sale would be had. It stated in clear language that the described premises would be sold at 10 o'clock in the forenoon on August 10, 1934, at the west front door of the courthouse in Tulsa, Tulsa county, Okl. The federal statute provides that all real estate sold under any order or decree of a United States court shall be sold at public sale at the court house of the county, parish, or city in which the property or the greater part of it is situated, or upon the premises, if the court so directs. 28 USCA § 847. It is provided by statute in Oklahoma that all sales made under execution shall be had at the courthouse in the county in which the land is situated. Section 460, O. S. 1931. The precise contention here is that the notice is misleading; that one looking for the place of sale would expect to find it at the door of the federal building, not the door of the courthouse of the county. With that contention we are not in accord. There is only one county courthouse in Tulsa and it has a west entrance. The United States court is held in the federal building, commonly called the post office building, and the offices of the marshal and other attachés of the court are there. The front entrance of that building is on the east side. There is no showing or even suggestion that public sales of real estate made under order of the United States court have ever been held at the federal building, nor is there any effort to show that as a result of the asserted uncertainty in the notice, prospective bidders were misled or bidding stifled. The contention is a technical one advanced by a defendant not personally liable for the

842

debt in suit and who failed to indicate in response to an inquiry from the court that it has any defense to the note and mortgage.

For the reasons indicated the order of the trial court is affirmed.