ELIZA J. HARBISON, *Appellee*, v. P. L. BEETS *et al.*, *and* H. P. BEETS *et al.*, *as Executors, etc., Appellants.*

No. 16,678.

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Action to Set Aside a Will—Advisory Findings by a Jury—Findings by the Court—Instructions.*   In a suit to set aside a will questions were submitted to a jury and answers returned which were approved in part and changed and revised in part by the trial court, the findings as finally determined being sustained by portions of voluminous and conflicting evidence. *Held*, that such find-

ings must be upheld, and that complaints concerning instructions are without avail unless leveled at those which show that the court misapprehended the law applicable to the case and which induced the findings.

2. ——— *Consistency of Findings.* Such findings, while seemingly inconsistent, being susceptible of reconciliation with one another and with the decree, are controlling.

3. WILLS—*Mental Capacity—Insane Delusion.* Mental capacity to understand and direct the terms of a will, made by a man eighty-six years of age to change a former will, is not inconsistent with an insane delusion causing such change.

Appeal from Miami district court. Opinion filed February 11, 1911. Affirmed.

*Frank M. Sheridan, Charles T. Meuser,* and *Bernard L. Sheridan,* for the appellants.

*Alpheus Lane,* and *C. W. Gorsuch,* for the appellee.

The opinion of the court was delivered by

WEST, J.: The appellee brought this suit to set aside the will of Joseph Beets, the amended petition alleging mental unsoundness and undue influence, the latter being eliminated by the findings.

A jury was impaneled and a number of questions submitted and answered, some of the answers being adopted by the court, and others changed or set aside, so that the findings as finally made by the court are all that need consideration, all complaints about the action of the jury being rendered futile by the fact that the court took the matter into its own hands. (*Medill v. Snyder,* 61 Kan. 15.)

Errors are alleged respecting instructions and rulings on the admission of evidence, but we do not find anything material therein.

It is insisted that the findings are unsupported by the evidence, and that some of them are contrary thereto, but from the lips of more than fifty witnesses fell testimony sufficient to support either theory of the case.

Harbison v. Beets.

It is urged that the findings are inconsistent, and that we should disregard them and render or direct a decree for appellants.

Joseph Beets, when about 81 years old, made a will giving one-fourth of his property to each of his four children. Several years later he went to live with his daughter, the appellee, and after a time became convinced that one of her sons had called his mother a liar and· seemed much incensed thereat, and left on the same day and went to stay with a son, H. P. Beets. The testator felt very apprehensive that his daughter was not well treated by her husband and sons, and that sometime she would be thrust aside by them and thrown upon her own resources, though her husband was a man of ample means. The result was that a few weeks after leaving his daughter's home he went to an attorney and had another will drawn, giving one-fourth of his property to each of the other children absolutely, but giving the appellee's fourth to her "to have and to hold under the following terms and conditions, to wit:

"I direct that such one-fourth of my property shall be held in trust for her during the period of her natural lifetime by my executors hereinafter named, who shall take such part and portion of my property into their control and possession and keep the same invested to the best advantage and pay to said Eliza J. Harbison the profits therefrom and also pay her such sums from the principal as may be needed for her support and comfort, but such trustee shall not pay to her from such funds more than shall be actually necessary for her own support and comfort, and at the death of the said Eliza J. Harbison I give all the rest, residue and remainder thereof to my other three children above mentioned, share and share alike, and if any one of my children be not living, then to the heirs of such one in equal parts, to have and to hold forever."

On returning he remarked that he now had the will as he wanted it, that Eliza's interest would be protected and it would insure her keep after he was gone,

and that her family would go back on her, adding,
"Now see who guesses right." One witness said the
testator had some kind of a stroke while at Harbison's,
but it is not clear whether this was before or after the
execution of the will. Some time after leaving he was
injured in a runaway, and thereafter taken to a sani-
tarium, where he died April 17, 1906. He left the
Harbison home March 19, 1905, and executed the will
in question on the 23d of the following May.

The findings, as finally arranged by the court, are
in substance that Joseph Beets was 86 years old and
physically able to be up and around when he executed
the will; that he knew to whom he was disposing of
his property in the will; that he knew all the provi-
sions thereof and understood their nature and effect,
but did not fully comprehend the nature and effect of
the disposition he was making; that he deemed it to
the best interest of the appellee to make the provision
that her share should be placed in the hands of trus-
tees, but that he was chiefly controlled by the thought
that she was in danger of being driven out of her
family; that he arranged with a neighbor to go to
town with him the day the will was drawn, and gave
to the attorney the information as to how he wanted
it drawn; that it was read over to him before its exe-
cution; that he told the neighbor on the way home that
it had been drawn the way he wanted it—"that he, in
some measure, understood the terms of the will, but
that he did not fully comprehend it." The following
also appear:

(4) "I adopt as my own the answer and finding of
the jury to question number four, the question being:
'At the time he made the will in question did Joseph
Beets have sufficient mental capacity to comprehend
what he was doing and how he was disposing of his
property in making said will?' The answer being:
'No.'

(5) "I adopt as my own the answer and finding of
the jury to question number five, the question being:
'At the time he made said will did Joseph Beets have

sufficient mental capacity to understand the ties of relationship and the claims of his various children upon him?' The answer being: 'No.'

(7) "I set aside the finding of the jury as to question number seven, the question being: 'Did he know of all the provisions of said will and understand the nature and effect of the disposition he was making of his property thereby?' The answer being: 'Yes.' I find that he knew of the provisions of said will, but did not fully comprehend the nature and effect of the disposition he was making.

(8) "I adopt as my own the answer and finding of the jury to question number eight, the question being: 'Did he fully understand and know that he was placing the portion that he gave to his daughter, Eliza J. Harbison, in the hands of trustees to be used for her support as therein directed?' The answer being: 'Yes.'

(9) "I adopt as my own the answer and finding of the jury to question number nine, the question being: 'Did he deem it to the best interest of Eliza J. Harbison to make the provision in his said will that her share of his property should be placed in the hands of trustees?' The answer being 'Yes.' And I further find that he was chiefly controlled by the thought that his daughter, Eliza J. Harbison, was in danger of being driven out of her family.

(10) "I adopt as my own the answer and finding of the jury to question number ten, the question being: 'At the time he made the will in question was Joseph Beets laboring under an insane delusion concerning his daughter, Eliza J. Harbison, or some member of her family?' The answer being: 'Yes.'

(11) "I adopt as my own the answer and finding of the jury to question number eleven, the question being: 'If you answer the last question "Yes," then state with reference to what person or persons he entertained such delusion.' The answer being: 'Joseph Harbison.' And I further find that the said delusion extended to the other members of the Harbison family.

(12) "I adopt as my own the answer and finding of the jury to question number twelve, the question being: 'If you answer question number ten "Yes," then state what insane delusion you refer to.' The answer being: 'The imaginary quarrel in the Harbison family.'

(16) "I adopt as my own the answer and finding

Harbison v. Beets.

of the jury to question number three, the question being: 'At the time of leaving the home of his daughter, the plaintiff, did Joseph Beets believe there had been a family quarrel in the Harbison home that day?' The answer being: 'Yes.'

(17) "I adopt as my own the finding and answer of the jury to question number four, the question being: 'If you answer question number three in the affirmative, state whether there had been a quarrel in the Harbison home that day, as believed by said Joseph Beets.' The answer being: 'No.'

(18) "I adopt as my own the finding and answer of the jury to question number five, the question being: 'If you find that Joseph Beets believed there had been a quarrel in the Harbison home or family on that occasion, state whether or not argument was used by any member of the Harbison family to convince him to the contrary, and if so, by whom?' The answer being: 'Yes, Mrs. Harbison.' And I further find that other members of the family used arguments on said occasion, to convince him to the contrary.

(20) "I set aside the answer and finding of the jury to question number seven, the question being: 'Did Joseph Beets leave the Harbison home because of his belief that they had a quarrel in said home on that day?' The answer being: 'He left home that day.' I find that he left the Harbison home because of his belief that there had been a quarrel in said home on that occasion.

(22) "I adopt as my own the answer and finding of the jury to question number nine, the question being: 'In making the will in question was Joseph Beets influenced in any way by an insane delusion as to acts, or any act, which he believed to have occurred in the Harbison family, the day that he left the Harbison home, and which in fact did not occur?' The answer being: 'Yes.'

(23) "I adopt as my own the answer and finding of the jury to question number ten, the question being: 'At the time of leaving the Harbison home, and at the time of executing the will in question, did Joseph Beets entertain an insane delusion that Joseph Harbison had abused or shown disrespect to his mother, Eliza J. Harbison, the plaintiff in this action?' The answer being: 'Yes.'

(24) "I adopt as my own the finding and answer of the jury to question number eleven, the question being: 'If you answer the last question in the affirmative, did said insane delusion influence said Joseph Beets in making the provisions, or any of them, contained in said will?' The answer being: 'Yes.'

(25) "I adopt as my own the finding and answer of the jury to question number twelve, the question being: 'Was the testator, Joseph Beets, of sound mind and memory at the time he executed the will in controversy in this action?' The answer being: 'No.'

(41) "I adopt as my own the answer and finding of the jury to question number fourteen, the question being: 'Is it a fact that at the time of the execution of the will in question that Joseph Beets was capable of transacting business generally.' The answer being: 'No.'"

There is a seeming conflict between these findings, but upon careful examination in the light of the evidence they are susceptible of reconciliation. That the testator fully understood and knew that he was placing the daughter's portion in the hands of trustees, to be used for her support as therein directed, is not necessarily inconsistent with the idea that he did not have sufficient mental capacity to comprehend what he was doing and how he was disposing of his property, in view of the further proposition that he did not have sufficient mental capacity to understand the ties of relationship and the claims of his various children upon him and that he was under an insane delusion as to an imaginary quarrel in the appellee's family and was influenced thereby in making the will, and that "he was chiefly controlled by the thought that his daughter, Eliza J. Harbison, was in danger of being driven out of her family." It all amounts to this: That he had mental capacity to know how he wanted the will drawn and to direct that the appellee's portion be placed in the hands of trustees, but not to transact business generally in a sane manner, on ac-

2—84 KAN.

count of the insane delusion about the quarrel and the fear of the daughter's being thrown upon her own resources by her well-to-do husband. True, the specific insane delusion found relates only to the imaginary quarrel, but manifestly the court, as shown by the ninth and eleventh findings, thought this specific delusion merged into the notion that the appellee was in danger of financial desertion, and that the testator entertained such notion is abundantly shown by the evidence, and no basis therefor is apparent. In other words, the result may be thus epitomized: He knew what he was doing, but he had an insane reason for doing it. This is really not more mysterious than other manifestations of insanity, for its effects are often inconsistent and inscrutable.

It is familiar law that one laboring under an insane delusion which influences him to make a will in a certain way does not possess testamentary capacity. In *Medill v. Snyder,* 61 Kan. 15, an instruction to the effect that "the testator might be capable of transacting the ordinary business affairs of life and sane on other matters, but that if the will was influenced and the direct offspring of an unfounded and insane delusion it could not be sustained" (p. 23), was approved. (Schouler, Wills & Adm. §§ 69-75; 1 Jarman, Wills, 6th ed., p. *38; *Kimberly et Ux. Appeal from Probate,* 68 Conn. 428, and note to the same case in 37 L. R. A. 261.)

The judgment of the trial court is affirmed.