No. 32,801

Donald P. Steward, Bernice E. Trennepohl and Dorothy R. Newlin, *Appellants*, v. B. W. Marker, Administrator of the Estate of Emily B. Steward, Deceased, et al., *Appellees.*

(57 P. 2d 75)

Opinion filed May 9, 1936.

*Walker F. Means,* of Hiawatha, for the appellants.

*F. M. Pearl, Roy V. Nelson* and *L. E. Helvern,* all of Hiawatha, for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to set aside a will on account of lack of testamentary capacity of testatrix and undue influence. Judgment was for defendants. Plaintiffs appeal.

The plaintiffs were the three grandchildren of the testatrix, Emily B. Steward. They were her only heirs at law. The defendants are certain nieces and nephews and other relatives by marriage of testatrix, to whom property was bequeathed in the will. Mrs. Steward was about 88 years old when she died. She made the will in question in 1931, when she was about 85. She lived most of her life on a 120-acre farm near Fairview. In about 1898 she moved to Fairview. At the time of her death she owned the farm near Fairview and the home where she lived. She and her husband, Frank Steward, had three children, Charles D. Steward, Marvin D. Steward and Lenora Steward. Her husband and all three children died before she did. Charles D. Steward, one of the sons, left surviving him a widow, Jennie Steward, and three children, Donald P. Steward, Bernice Minton (formerly Bernice Trennepohl) and Dorothy Newlin. These three are the only heirs of testatrix and are the plaintiffs in this case.

Marvin Steward was survived by his widow, Isabel Steward. She died in April or May of 1934, after the death of testatrix. They had

no children. Lenora Steward married a man by the name of Newlin and died in 1897, leaving only her husband surviving her. The defendent John Gregg is a son of testatrix's sister. Defendant Daisy Gregg is John Gregg's wife. Defendant Christina Finch is a niece of testatrix. Oscar Finch is her husband. Defendant Katie Reinhart was a sister of testatrix. John Reinhart is her husband. Defendants Jennie Stunz and Maggie Combs are also sisters of testatrix.

Under the will, which is sought to be set aside, Christina Finch, of Omaha, Neb., and John Gregg, of Ralston, Neb., each received an undivided one-third interest in the farm. John Gregg also was bequeathed the home in Fairview. Jennie Steward, mother of plaintiffs, and Isabel Steward were each bequeathed a one-sixth interest in the farm. All the personal property of which testatrix died possessed was bequeathed to Christina Finch and John Gregg, share and share alike. Plaintiffs, who, if testatrix had died intestate, would have inherited the entire estate, were left nothing. After testatrix left the farm Marvin Steward lived on it. He lived there until 1910. From that time on Jennie, the daughter-in-law of testatrix, lived on the farm with her son Donald and paid rent to testatrix.

Prior to 1923 testatrix was of average mental capacity. About 1923 Jennie Steward began to notice a deterioration in her mother-in-law's mental faculties. In 1928 this condition became worse and it was necessary for Jennie to transact her business for her. While her capacity to make a will is the question in this case there can be little doubt that for some years before her death testatrix suffered from delusions.

The issues were framed on the question of whether or not testatrix had testamentary capacity at the time she made her will and whether she had been subjected to undue influence. With the issues thus framed the case was submitted to the court. The trial court found for defendants on both these issues. Judgment was entered accordingly.

The first point argued by plaintiffs is that the court erred in rendering judgment for defendants because the uncontradicted evidence clearly showed that testatrix, at the time of making the will which is sought to be set aside, suffered from an insane delusion that her grandchildren, plaintiffs herein, were not grown up and were supported by their mother, Jennie Steward, and was actuated by this delusion in not providing for her grandchildren in her will.

Since the argument made in this court turns upon the evidence

introduced in the trial court, that evidence will be reviewed somewhat.

On April 8, 1931, Oscar Finch and Christina Finch called at the farm where Jennie Steward lived and said they were going to take Mrs. Emily Steward, whom they called mother, for a ride. At the suggestion of Jennie they brought her out to the farm for dinner. After dinner Christina and Oscar took Emily to Hiawatha to the office of a lawyer. Here they asked the lawyer to draw a will for Emily. Mr. Finch introduced her to the lawyer and withdrew. A will was drawn there, but when it was presented to Emily it was not just as she wanted it and she suggested some changes. Before these changes could be made Mr. Finch said he had to go back to Omaha that night and they all left. The following morning Mr. Finch came to the office and made arrangements for the lawyer to come over to Fairview at some time in the future to write a will. This will, as Emily Steward wanted it changed, would have left all of her personal property, the home in Fairview, and a one-third interest in the farm to Jennie Steward. It would have given Isabel a one-third interest in the farm and would have given Christina Finch and John Gregg each a one-sixth interest in the farm.

Our attention is directed to the following clause in that will:

"I make these provisions for my beloved heirs, with no more love, affection or appreciation of one than the other. I make provision more liberally to my daughter-in-law, Jennie Steward, because I am mindful of my three grandchildren, Bernice Steward, Donald Steward and Dorothy Steward, who are dependent upon her for their support. I am not forgetful of my beloved daughter Olive L. Steward, who has preceded me in death, but I am making no provision herein for her heirs."

It will be noted that the three grandchildren named in that clause are the plaintiffs in this case.

On June 27, 1931, Mrs. Helvern, the wife of the lawyer to whom the parties had gone in the first place, wrote a will for Emily in her home at Fairview. The record is silent as to how Mrs. Helvern happened to be in the home of testatrix on that particular day, except she testified that she must have been called by telephone.

On that occasion Mrs. Helvern wrote, and testatrix executed, the will which this action sought to set aside. The only persons present while the will was being written were Mrs. Helvern and testatrix.

That will gave an undivided one-sixth interest in the farm to Jennie Steward, an undivided one-sixth interest to Isabel Steward, a one-third interest to Christina Finch, and a one-third interest to

John Gregg. This will also gave the home in Fairview to John Gregg and gave all the personal property to Christina Finch and John Gregg to be divided as they saw fit. Our attention is directed to the following clause:

"Seventh. I make these provisions for my beloved heirs, with no more love, affection or appreciation of one than the other. Nor am I forgetful of my beloved daughter Olive L. Steward, who has preceded me in death, but I am making no provision herein for her heirs."

It will be noted that the three grandchildren, plaintiffs in this action, are not beqeathed anything in either will.

· We will now refer to the first contention of plaintiffs that the uncontradicted evidence showed that testatrix, at the time of making the alleged will, suffered from an insane delusion that her grandchildren, plaintiffs in this case, were not grown up and were supported by their mother, and was actuated by this delusion in not providing for her grandchildren in her will.

Jennie Steward testified that about 1928 Emily's mind began to fail. Jennie lived on the farm and would see testatrix two or three times a week or more often. She would have to help testatrix with her affairs at the bank and with her taxes. The testatrix would often forget where she had put things, especially her money, and Jennie would have to come to town and help her find it. Jennie testified that from 1928 until the day of her death Emily had the idea that people were stealing from her, and on this account she kept guns and different implements and other things in her bed. She testified that people were coming to the house in the nighttime and stealing things. As to the grandchildren, Jennie testified that she always liked them until her mind got bad and there were times when she did not recognize them. She testified that during 1928 and 1929, when she was staying with testatrix, Donald would come to the house after her and testatrix would not know him, and when she would say "Oh that is Donald," testatrix would say "I did not know he was grown up." Donald was twenty-two years old at that time. On this point a neighbor testified as follows:

"Did she seem to always know her relatives, who they were, her friends? A. Oh, no. I think she always knew me. I always hollered before I got there. I would say, 'How are you?' and she would say, 'Is that you, Ella?' and I would say, 'Yes.' But then any number of times she didn't know Donald. She would say, 'Who is that man?' and when he would come in why she would say, 'Why, who is that?' Why it is Donald. 'Why, he ain't that big,' she would say."

This witness testified that many times Donald would come to see testatrix and she would not know him.

Dorothy Newlin, one of the plaintiffs, testified that many times she went with her brother and sister to see testatrix and testatrix did not recognize them at first. This is all the evidence there is in the record bearing on the question of the delusion upon which plaintiffs depend.

Plaintiffs rely on the holding of this court in the case of *Harbison v. Beets*, 84 Kan. 11, 113 Pac. 423. In that case this court said:

"It is familiar law that one laboring under an insane delusion which influences him to make a will in a certain way does not possess testamentary capacity. In *Medill v. Snyder*, 61 Kan. 15, an instruction to the effect that 'the testator might be capable of transacting the ordinary business affairs of life and sane on other matters, but that if the will was influenced and the direct offspring of an unfounded and insane delusion it could not be sustained' . . . was approved." (p. 18.)

That case was one where the testator had an insane idea that all the relatives of one of his daughters were on unfriendly terms with her and that there was danger of her being thrown on her own resources. In that case the court had found that the clause of the will that was being questioned was written by the testator on account of the insane delusion.

In this case the court made no such finding, nor can we say from this record that the uncontradicted evidence warranted any such a finding. Granting that testatrix quite often did not realize that the grandchildren were grown up, such a belief does not compel a conclusion that had she realized that they were grown up she would have bequeathed them some property. Had she been aware of the true fact that they were grown up it might be argued that this would have been a reason for her not making provision for them in her will.

Plaintiffs next argue that the uncontradicted evidence showed that testatrix did not know the extent of her property or the natural objects of her bounty. Under this head plaintiffs refer to the testimony of many neighbors and friends. The bankers, the doctor, the mayor of the city and many neighbors testified for plaintiffs. They made out a good case that testatrix was absent-minded; that she had the delusion that somebody was stealing from her, and mental quirks of a similar nature. Had the trial court heard this evidence and made a finding of incompetency it would have been difficult to disturb it on appeal. However, there was evidence offered on the other side. A few of the neighbors, the people who drew the wills, and a

doctor who answered a hypothetical question all testified that at the times when they saw testatrix she seemed normal. The text of the two wills themselves is persuasive that she knew what property she had, since the two pieces of real estate, as well as personal property, are mentioned in each will. We cannot say that the fact that testatrix did not leave anything to her grandchildren, the plaintiffs here, is any evidence that she did not know the natural objects of her bounty. It is not inconceivable that she had some reason which to her seemed sufficient for leaving her property as she did. We do know that in both wills she mentioned quite a number of people who were related to her by marriage and she knew the relationship that each bore to her. It was proper for the trial court to consider the provisions of a will in determining the mental capacity of the testator to make it. See *Wisner v. Chandler,* 95 Kan. 36, 147 Pac. 849. The trial court considered this case and reached a conclusion as to the facts on conflicting testimony. Under such circumstances the result will not be disturbed. See *Bradley v. Hill,* 141 Kan. 602, 42 P. 2d 580.

Plaintiffs next argue that the uncontradicted evidence showed that undue influence was practiced upon testatrix by Christina and Oscar Finch.

It is difficult to see what evidence in the record is relied upon by plaintiffs to sustain this contention. Mr. and Mrs. Finch come into the case only when they came to Fairview and took testatrix to Hiawatha to the office of a lawyer. Much is made of the fact that Mr. Finch made an excuse to take testatrix away when he saw that the will written in the office was not as favorable to himself as he wished. This certainly is not conclusive evidence that he used any influence on testatrix to make the bequests that are contained in the will that this action seeks to set aside. It is true that Mr. Finch came back to the lawyer's office the next morning and said something to them about going to Fairview to write the will. From this time on, however, neither Mr. nor Mrs. Finch appear in the case. When the will was finally written Mrs. Helvern, the wife of the lawyer to whose office they had gone in Hiawatha, was in the home alone with testatrix and wrote the will for her. As far as this record shows, nothing more happened there than would have happened had any lawyer been called to a home to write a will. Taking into consideration all the facts and circumstances, and drawing the infer-

ence from them most favorable to the contention of plaintiffs, the most that can be said is that the evidence of plaintiffs raised a suspicion that Mr. and Mrs. Finch exercised undue influence over testatrix. There was evidence the other way, and the trial court found in effect that there had been no undue influence. That ended the matter.

The plaintiffs next argue that the judgment was not supported by any substantial, legally sufficient evidence, and was contrary to the weight of the evidence. What has already been said disposes of that contention.

The judgment of the trial court is affirmed.