[No. 25333. *En Banc.* February 14, 1935.]

THE STATE OF WASHINGTON, *on the Relation of Sadie R. Brown et al., Plaintiff,* v. WILLIAM G. LONG, *as Judge of the Superior Court for King County, Respondent.*[1]

[1]Reported in 41 P. (2d) 396.

*Bonsted & Nichoson, Poe, Falknor, Falknor & Emory,* and *Reba J. Hurn,* for relators.

*Rummens & Griffin, Gallagher & Gallagher,* and *Allen, Froude & Hilen,* for respondent.

MITCHELL, J.—The administrator with the will annexed of the estate of Sarah E. Smith, deceased, commenced this proceeding in the superior court under Rem. Rev. Stat., § 1472 [P. C. § 9928], against Sadie R. Brown and Fred R. Brown, alleging that they wrongfully withheld a large amount of personal property, consisting of bedroom sets, davenports, carpets, rugs and household furnishings belonging to the estate. The probate department of the superior court entered an order upon which a citation was issued requiring them to appear in person before the court at a time fixed, then and there to answer such questions as may be propounded to them upon oral examination by the administrator or his attorney, and to remain in attendance from day to day and time to time as the court may direct.

The citation was duly served. They appeared specially in the cause and moved to quash the citation, for the alleged reason that the court was without jurisdiction of the subject-matter of the petition. The motion was denied. Thereupon, in open court, at the instance of the administrator, they were orally examined at great length concerning personal property in their possession, the examination lasting some three days.

At the conclusion of the examination, the court declared the purpose of making an order directing them to permit witnesses to inspect the personal property either at the home of Sadie R. Brown and Fred R. Brown or that they display the property elsewhere for that purpose. Thereupon, Sadie R. Brown and Fred R. Brown commenced this proceeding in this

court to prohibit the judge of the superior court from exceeding its jurisdiction by its threatened order directing an unlawful invasion of their home and a violation of their personal rights. In response to an alternative writ, the respondent, judge of the superior court, has made and filed a full and complete return upon which the cause has been submitted.

After reciting considerable matter of circumstantial and testimonial character, the concluding paragraph of the return clearly presents the situation. It is as follows:

"Respondent further says that he did not at any time intend to require Sadie R. Brown or Fred R. Brown to permit any person to enter the home referred to but he did intend to, and unless restrained by this [supreme] Court, will issue an order compelling and requiring the said Sadie R. Brown and Fred R. Brown either to permit an inspection of the property in said home or require them to display the same at some place convenient to the Court, to counsel for both parties, and to witnesses for inspection, *to the end that the witnesses may determine whether said property is the property of the Estate of Sarah E. Smith; and respondent intends, unless enjoined by this [supreme] Court, to make such an order and to enforce it by proceeding in contempt, if necessary.*"

Rem. Rev. Stat., § 1472 [P. C. § 9928], relating to probate law and practice, says:

"The court shall have authority to bring before it any person or persons suspected of having in his possession or having concealed, embezzled, conveyed or disposed of any of the property of the estate, or who has in his possession or within his knowledge any conveyances, bonds, contracts, or other writings which contain evidence of or may tend to establish the right, title, interest or claim of the deceased in and to any property. If such person be not in the county in which the letters were granted, he may be cited and examined either before the court of the county where found or

before the court issuing the order of citation, and if he be found innocent of the charges he shall be entitled to recover costs of the estate, which costs shall be fees and mileage of witnesses, statutory attorney's fees, and such per diem and mileage for the person so charged as allowed to witnesses in civil proceedings. Such party may be brought before the court by means of citation such as the court may choose to issue, and if he refuse to answer such interrogatories as may be put to him touching such matters, the court may commit him to the county jail, there to remain until he shall be willing to make such answers.''

Boiled down, the statute means that a person suspected concerning property of the decedent's estate may be brought before the court, *and if he refuse to answer such interrogatories as may be put to him touching such matters, the court may commit him to the county jail, there to remain until he shall be willing to make such answers.*

This statute in no way authorizes, nor was it intended to authorize, the superior court to try out the title to, nor the right of possession of, property claimed by the representative of an estate; nor to qualify any witness, whether interested or not, expert or non-expert, so that he may testify at some possible future trial, civil or criminal. The statute is one of discovery. It does not relate to the trial of any pending issue. We have so held.

In *State ex rel. Wolfe v. Superior Court,* 139 Wash. 102, 245 Pac. 764, the statute was construed, and in that action a writ of prohibition was granted against the superior court when it attempted to exercise powers beyond the authority granted by the statute. In that case, we said:

''This statute is unquestionably within the constitutional powers of the legislature, and manifestly it confers jurisdiction on the superior court, sitting in probate, to bring before it any person suspected of

having in his possession property belonging to an estate and subject the person to an examination concerning such property. This it is authorized to do by citation, and, if the citation is proper in form and substance and is properly served, the court has jurisdiction for the purposes contemplated over the person of the individual cited. No question is here made as to the regularity of the proceedings in these respects, and seemingly, the only question for our consideration is whether the court has acquired jurisdiction to try out the matters of difference between the parties respecting the title to the property in question.

"The court's power to try the issue it has announced it will try must be found in the cited statute. Turning to the statute, it is at once apparent that it does not upon its face authorize the procedure here contemplated by the trial court. On its face it is a statute of discovery. It provides a means by which the representatives of an estate may bring before the court a person suspected of having in his possession, or having concealed, embezzled, conveyed or otherwise disposed of property of an estate, or suspected of having possession or knowledge of documents which might tend to establish title in the estate to property and subject the person to an examination with respect to the property. It provides, moreover, only for an examination. It does not directly authorize the court to make an order with respect to property, even if property is discovered. Much less can it be said, that it directly authorizes the court to try out the title to property claimed by the representatives of the estate on the one side, and by the person holding it on the other. If, therefore, the statute authorizes the procedure contemplated by the trial court, it does so, not by direct enactment, but by necessary intendment. But we cannot conclude that it has this effect. Seemingly, if the legislature had so intended, it would have expressed the intention in language not capable of being misunderstood, and not left it to surmise or conjecture.

"Nor are the representatives of an estate left without remedy. The section of the statute quoted is from the probate code, and that code, in subsequent sec-

tions (§§ 1517-1523) [P. C. §§ 9885-9891], provides remedies, not only for the condition here presented, but for every conceivable wrong that may be committed against an estate. The actions contemplated are actions under the general practice act, to be brought, tried and concluded in the way the general practice act prescribes. In them no reference is made to the remedy afforded by the section quoted, and seemingly this fact alone is almost, if not quite, conclusive evidence that the legislature did not intend it as an alternate remedy for the recovery of property.''

True, that case differed somewhat from the present one, because, there, upon petition and citation under the statute, the trial court sitting in probate was asked to order delivery of property to the administrator, and the court announced its purpose to try out the title to the property. The situation, however, necessitated a construction of the statute in question, and the holding that the statute was one for discovery only is decidedly pertinent to the present case. Discovery, by the means and to the extent defined by the terms of the statute, is the limit of authority given.

But the threatened action here is far beyond the relatively or comparatively mild and harmless thing authorized by the statute. Here, the respondent says that, unless restrained, he

''. . . will issue an order compelling and requiring Sadie R. Brown and Fred R. Brown either to permit an inspection of the property in said home or require them to display the same at some place convenient to the court, to counsel for both parties and to witnesses for inspection, *to the end that the witnesses may determine whether said property is the property of the estate of Sarah E. Smith.*''

Just why the court and respective counsel should be present when an inspection is made, ''to the end that the witnesses may determine whether said property is

the property of the estate of Sarah E. Smith," is not made clear, nor is it material. Besides, witnesses are not triers of facts; it is not their province to decide the ownership of property. Moreover, witnesses for what? There is no present trial of any issue between the parties. Is it intended to have a trial in the future or not, according to what the witnesses may determine upon an inspection of the property, in the manner threatened? Such a plan by which it is thought witnesses may qualify to testify in court would do violence to cherished forms and principles, and be at variance with well-understood fundamental rights. Nor is the alternative that the relators display the goods "at some place convenient . . . to the end that the witnesses may determine whether said property is the property of the estate of Sarah E. Smith" in any manner less offensive to such rights and guaranties. In legal effect, the two are equal. There is no authority for either of the plans threatened to be ordered by the superior court.

The writ should issue as prayed for. It is so ordered.

MILLARD, C. J., MAIN, STEINERT, GERAGHTY, and BLAKE, JJ., concur.

BEALS, J. (dissenting)—Rem. Rev. Stat., § 1472 [P. C. § 9928], quoted in the majority opinion, confers upon the superior court some extraordinary powers in connection with proceedings for the discovery of property belonging to an estate which is being administered under direction of the court. The property of estates which are within the administrative jurisdiction of the superior court is held in *custodia legis* pending administration.

Rem. Rev. Stat., §§ 1589, 1590 [P. C. §§ 9931, 9932], read as follows:

" § 1589. It is the intention of this act that the courts mentioned shall have full and ample power and authority to administer and settle all estates of decedents, minors, insane and mentally incompetent persons in this act mentioned. If the provisions of this [act] with reference to the administration and settlement of such estates should in any cases and under any circumstances be inapplicable or insufficient or doubtful, the court shall nevertheless have full power and authority to proceed with such administration and settlement in any manner and way which to the court seems right and proper, all to the end that such estates may be by the court administered upon and settled.

"§ 1590. In exercising any of the jurisdiction or powers by this act given or intended to be given, the court is authorized to make, issue and cause to be filed or served, any and all manner and kinds of orders, judgments, citations, notices, summons, and other writs and processes not inconsistent with the provisions of this act, which may be considered proper or necessary in the exercise of such jurisdiction."

These sections confer upon the court very broad powers in connection with the collection and preservation of the assets of an estate. It is not only the right but the duty of the court to assume jurisdiction over the property of an estate as soon as possible, and by the least expensive means bring all the property within judicial custody.

In my opinion, the superior court was well within its authority in making the order that it announced that it would enter, although jurisdiction to make such an order is derived rather from the court's general powers than from § 1472, above referred to. While it is true that the superior court, in the course of the administration of an estate, cannot summarily try the title to real or personal property, this court has held that, when issues are regularly made up on a petition to strike property from an inventory, the matter can

be tried in the course of the probate administration, and the title to the property determined. *In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960; *Sloan v. West,* 63 Wash. 623, 116 Pac. 272.

If an issue raised on a petition to strike property from an inventory can be tried in the course of administration, it would seem that an issue made up on petition of the administrator and citation issued thereon to the proper party to bring property within the inventory, could also be so determined. This does not deprive any party of the right to a jury trial, as a jury can be summoned to determine questions of fact in the probate proceeding as well as in any other cause.

If, then, the court can direct the initiation of a proceeding to try the title to property as between an estate and one claiming ownership, certainly, the court, in order to enable it to proceed accurately and promptly, should have authority in an appropriate case to order the person having personal property in his possession claimed by the administrator to exhibit the same to the court, in order that the court may readily be advised as to whether or not its officer, the administrator, should be directed to proceed further in an attempt to obtain an adjudication of ownership. If the property can not conveniently be brought before the court, then the court or its representative should be permitted to view and examine the property; all this in aid of its broad jurisdiction in connection with property which is, or ought to be, in *custodia legis.*

In my opinion, there is here presented no question concerning the inviolability of the home, as the superior court stated that the property could be taken without the home if relators did not wish to admit representatives of the court to their dwelling.

While, of course, an administrator may institute an

action in replevin, he, as an officer of the court and proceeding under the court's directions, should, before being required to institute such an action, with attendant delay and expense, have the aid of the court in enabling him to determine, as near as may be, whether or not such an action should, in fact, be instituted.

The administrator is not personally interested in the matter. He is simply acting as an arm of the judicial authority. On the questions here presented, it seems to me that the same procedure should be followed as would apply in receiverships or in bankruptcy proceedings in the United States district court.

Conceding that the title to real or personal property cannot be tried without issues regularly made up, and conceding, for the purposes of argument, that the court could not direct relators to admit anyone into their home, I am still of the opinion that the trial court, in proceeding as it did, was well within its rights, and that relators' application for a writ of prohibition should be denied.

No question is here presented as to the making of any order by the court to cover any expense necessarily to be incurred by relators in taking the property out of their home to some place where it would be subject to examination.

In 2 Woerner's Law of Administration (3d ed.) 1026, § 325, the matter of summary proceedings to recover assets is discussed. The principle is laid down that

"The proceeding in such case is held to be plenary, the object being to perpetuate the evidence against the party charged, to be used upon any action to be brought thereon."

The laws of the different jurisdictions are discussed, and the different rules stated.

The supreme court of Wisconsin, in the case of *Meyer v. Garthwaite,* 92 Wis. 571, 66 N. W. 704, held that the lack of jurisdiction of the county court was sufficient reason for a court of equity entertaining a suit for the recovery of possession of assets of estates in process of administration. The particular powers of a court of equity are considered in connection with such a matter, and the case is of interest here, as, of course, the superior court of this state, whether sitting as a law court, a probate court, or in equity, has all the equitable powers formerly vested alone in the chancellor.

In the notes following the case of *Humbarger v. Humbarger* (72 Kan. 412, 83 Pac. 1095), 115 Am. St. 204, the annotator, at page 211, states that, under statutes concerning the discovery of concealed assets of an estate, the proceeding partakes of a suit in chancery, and is in the nature of a bill for discovery and relief. Under the title, ''Scope and Object of Proceeding,'' on page 211 and the following page, various cases are discussed; it being stated in the text that

''One of the objects of such statutes is to enable the administrator to secure information as to property which he is required to inventory or appraise, although the present situation of the property is such that it would be impracticable to order its delivery to the administrator.''

In this connection, it would seem that the most important step which could be taken in connection with such examination would be the production of the property in court, so that the same could be examined and identified. It seems to me clear that a court of equity is vested with such power touching property which it may be the court's duty to take into its possession.

In *In re Leonard's Estate,* 113 Misc. Rep. 205, 185 N. Y. Supp. 243, the court, after a hearing, entered an

order directing either the delivery of certain property to the administrator of an estate or that the property be submitted to the administrator for examination so that she could determine its value. The order included the right on the part of the administrator to have the property appraised by persons competent to judge of its value.

The proposed order now under review is entirely personal in its nature, and effective only against the person to whom the same is to be directed. If, in obeying the order, the home be voluntarily opened to strangers, that result will follow the voluntary choice of the home owner, is a mere incident, and is not the necessary or legal effect of the order. If the property be exhibited to the court's representatives while in place in the home, that will be the result of the exercise by the home owner of his own volition.

It is inconceivable to me that a court of equity is so powerless that it cannot order the production in court of an article of personal property, such as a watch or a piece of jewelry, in order that the same may be examined with the view to determining whether or not an administrator of an estate should be directed to institute proceedings for the trial of title to such property. That a witness present before the court in response to due process can say, "Yes, I have a watch, or a diamond; it is in my pocket, or at my office, or in my bureau drawer at home," and that the court is so powerless as to be unable to enforce the production in court of the article in question, presents, as I see it, a situation never contemplated by our laws governing judicial procedure.

I accordingly dissent from the conclusion reached by the majority.

TOLMAN and HOLCOMB, JJ., concur with BEALS, J.