[No. 27447.  *En Banc.*  July 9, 1940.]

*In the Matter of the Estate of* FRANK IVERS, *Deceased.*

FRANCES IVERS WILSON, *Appellant,* v. MARGARET IVERS, *as Administratrix, Respondent.*[1]

[1]Reported in 104 P. (2d) 467.

478

*Hamblen, Gilbert & Brooke,* for appellant.

*H. Earl Davis,* for respondent.

STEINERT, J.—This is an appeal from an order denying a petition for the issuance of a citation directing an administratrix to show cause why she should not be required to include certain bank deposits in her inventory of the estate. The petition and answer, taken together, presented to the probate court the question

whether the deposits belonged to the decedent at the time of his death or whether, on the contrary, they were, or became, the separate property of his wife. The facts were not in dispute, and the order entered by the court was based upon a determination that the estate as a matter of law possessed no interest in the deposits.

Frank Ivers, a resident of Spokane, died intestate in this state on July 10, 1937, leaving, as his sole heirs at law, his widow, Margaret Ivers, respondent herein, and his two daughters, Frances Ivers Wilson, appellant here, and Marie Ivers Hutchins. So far as the record discloses, the daughters are nonresidents of this state. The widow was duly appointed and now is the administratrix of the estate of the decedent.

At the time of the death of Frank Ivers, there was on deposit in the Seattle First National Bank, Spokane & Eastern Branch, the sum of $1,007.93 credited to the joint account of Mr. and Mrs. Ivers. The account had been opened during the year preceding Mr. Ivers' death, upon a printed form of agreement supplied by the bank and reading as follows:

"The undersigned hereby open a joint and several account with you to be kept in our names, and which shall be paid out on the check or other order of either of us. Each depositor's interest is acknowledged to be several as well as joint in the entire amount of the deposit now made, or as it may hereafter be, and the death or other disability of either depositor shall not affect the right of the other to withdraw the entire deposit. Each of us is authorized by the other to endorse the name of the other to all checks to be cashed or deposited. The signatures which you will honor are as follows:

(Signed)   F. Ivers<br>
Mrs. F. Ivers"

At the same time, there was on deposit in the United States National Bank of Portland, Pendleton Branch,

the sum of $3,060.30 in a similar joint account, which had been opened in April, 1935. The agreement evidencing that account was printed on a card furnished by the bank and read as follows:

"The United States National Bank of Portland accepts the joint account herein provided for under the following conditions, which are accepted by the undersigned and constitute a contract between the Bank and the depositors and/or each of them.

"Deposits entered herein are payable to either F. Ivers or Mrs. F. Ivers, or the survivor, and in case of the temporary closing of this account, you are hereby notified that a deposit thereafter by either is to be payable to either or the survivor, in case of the death of either, unless you are otherwise notified.

"Each depositor is authorized to sign and endorse checks, notes, drafts or other commercial paper payable to the other, and deposit the same in this account, and each depositor is the general agent of the other for all purposes connected with making deposits to this account or drawing checks thereon, and in case of overdraft by either, or overpayment to either, said overdraft or overpayment having arisen by error, mistake, inadvertence or otherwise, they are jointly and severally liable to the Bank for said overdraft or overpayment.

"In case of action to recover back said overdraft, or overpayment, the undersigned agree to pay in addition thereto such additional sum as attorney's fees as the court may adjudge to be reasonable to such action.

"Dated April 24th, 1935.

             (Signed)    F. Ivers
             (Signed)    Mrs. F. Ivers."

These two deposit agreements constitute the only evidence in the record concerning the transactions in which the accounts were opened. There is no evidence of any specific agreement solely and exclusively between Mr. and Mrs. Ivers with respect to the character, ownership, or disposition of the funds deposited.

During the course of the probate proceedings, ap-

pellant filed a petition alleging that respondent had not made a full and correct inventory of the property belonging to the estate, in that she had not included the moneys standing in the two joint accounts, which, it was averred, were community property. The prayer of the petition was that a citation issue requiring respondent to show cause why all moneys on deposit should not be included in the inventory. Respondent appeared by answer and return to the petition, and set forth in her pleading the facts substantially as we have already narrated them, and claiming that, by reason of the terms and conditions of the agreements and the subsequent death of Mr. Ivers, she became the sole owner of the two accounts. She further alleged that, of the moneys on deposit in the Oregon bank, at least one thousand dollars was at all times her separate property; that issue, however, is not presented for adjudication on this appeal. The material allegations of the answer were denied by reply. The matter was thereupon submitted to the court on the pleadings. The court rendered a memorandum opinion expressing the view that the agreements created joint tenancies with the right of survivorship, and thereafter entered an order confirmative of its memorandum opinion and denying the petition.

Respondent has moved to dismiss the appeal upon the ground that the order here in question is not a final and appealable order in that this proceeding, having been instituted under Rem. Rev. Stat., § 1472 [P. C. § 9928], is in the nature of a discovery proceeding, and the statute makes no provision for an appeal from such an order. The following cases are cited in support of the motion: *State ex rel. Wolfe v. Superior Court,* 139 Wash. 102, 245 Pac. 764; *In re Robinson's Estate,* 142 Wash. 552, 253 Pac. 816; *State ex rel. Brown v. Long,* 180 Wash. 602, 41 P. (2d) 396.

The *Robinson* case, *supra,* merely held that an initiatory order directing an administrator to institute summary proceedings for the recovery of assets as provided by Rem. Comp. Stat., § 1472, was not an appealable order under Rem. Comp. Stat., §§ 1591 and 1716.

In both of the other two cases cited, *supra,* it was held that Rem. Rev. Stat., § 1472 (formerly Rem. Comp. Stat., § 1472), was a statute of discovery only and did not authorize the court to try title to the property involved.

However, in each of these latter two cases, the matter came to this court by way of writ of prohibition to restrain the superior court from proceeding to try title in a case where the parties were before that court only in discovery proceedings and wherein no issues had been joined on the matter of title to the property. In the case now before us, we have an entirely different situation. Here, the respondent in her answer asserted title to the deposits in the joint account, and in fact that was the real issue presented to the court.

Where parties come into court without objection and submit the title to specific property for adjudication, the court may determine the ownership of such property. *In re Uzafovage's Estate,* 153 Wash. 620, 280 Pac. 85; *In re Quick's Estate,* 161 Wash. 537, 297 Pac. 198.

Respondent, however, contends that the rule just stated should not control this case, for the reason that appellant's sister, who is one of the heirs at law, was not a party to the proceeding; and that, therefore, all parties interested in the matter to be adjudicated were not before the court.

Conceding for the sake of argument that such objection would be effective if properly raised, it comes too late upon the appeal. No objection having been raised by demurrer or answer, and the court having

obtained jurisdiction of the subject matter, respondent may not now claim that there is a defect of parties. Rem. Rev. Stat., §§ 259, 261 and 263 [P. C. §§ 8346, 8348, 8350]. *Hannegan v. Roth,* 12 Wash. 65, 40 Pac. 636; *State ex rel. Abrashin v. Terry,* 74 Wash. 208, 133 Pac. 386; *Collins v. Warner,* 141 Wash. 162, 251 Pac. 288; *O'Neal Land Co. v. Judge,* 196 Wash. 224, 82 P. (2d) 535.

The motion to dismiss the appeal is denied.

Upon the merits of the case, the question is whether or not, with respect to the moneys on deposit, the agreements through which the joint accounts were opened created joint tenancies with the right of survivorship. The court answered the question in the affirmative.

The doctrine of survivorship as an incident of joint tenancy was abrogated in this state in 1885 by an act of the legislature entitled: "An Act to Abolish the Right of Survivorship in Estates held in Joint Tenancy." Rem. Rev. Stat., § 1344 [P. C. § 3426]; *Mabie v. Whitaker,* 10 Wash. 656, 39 Pac. 172; *Brownfield v. Holland,* 63 Wash. 86, 114 Pac. 890; *Halverstadt v. Estus,* 160 Wash. 390, 295 Pac. 175; *Winner v. Carroll,* 169 Wash. 208, 13 P. (2d) 450.

By Laws of 1929, chapter 123, p. 280, § 2 (Rem. Rev. Stat., § 3348 [P. C. § 373] (3)), the provision for survivorship as an incident of joint tenancy was revived with respect to joint accounts in mutual savings banks. *Winner v. Carroll,* 169 Wash. 208, 13 P. (2d) 450; *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45.

By Laws of 1933, chapter 183, p. 729, § 41 (Rem. Rev. Stat. (Sup.), § 3717-41 [P. C. § 4564-61]), the doctrine of survivorship was restored as to joint ownership of shares in building and loan associations. *Nelson v. Olympia Federal Savings & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019.

With respect to joint accounts in banks and trust companies generally, Rem. Rev. Stat., § 3249 [P. C. § 292], provides as follows:

"When a deposit has been or shall hereafter be made, in any bank or trust company in the name of two or more persons, payable to any of such persons, such deposit or any part thereof, or any interest, or dividend thereon, may be paid to any of said persons, whether the other be living or not, and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge of such corporation for any payment so made."

It will be observed that this statute contains no provision respecting joint tenancy or survivorship. It announces no rule of property, nor does it prescribe any rule of evidence. That statute was undoubtedly enacted merely for the protection of banks and trust companies. There is no statute in this state which restores the right of survivorship with respect to joint accounts held in commercial banks or in financial institutions such as are involved in this case, and as to them, Rem. Rev. Stat., § 1344, is still controlling. Joint tenancy of such an account does not, of itself, create the right of survivorship in one joint tenant upon the death of the other.

Respondent, however, does not rest her claim to the deposits upon any right of survivorship existing as a consequence of a common law joint tenancy, but contends that, regardless of the source or original character of the funds, *whether separate or community property*, each of the joint depositors therein had the right, under the terms of the agreements, to withdraw the whole or any part of the deposits; and that, upon withdrawal by either depositor, whether in the lifetime or after the death of the other, the amount withdrawn became the separate property of the one withdrawing it.

The right thus asserted is based upon contract, which in this case is the contract made by the depositors with each of the banks. In support of her contention, respondent cites the following authorities: *In re Edwards' Estate,* 140 Ore. 431, 14 P. (2d) 274; *Malone v. Sullivan,* 136 Kan. 193, 14 P. (2d) 647, 85 A. L. R. 275; *Holt v. Bayles,* 85 Utah 364, 39 P. (2d) 715; *Royston v. Besett,* 183 Okla. 643, 83 P. (2d) 874; *Battles v. Millbury Savings Bank,* 250 Mass. 180, 145 N. E. 55; *Erwin v. Felter,* 283 Ill. 36, 119 N. E. 926, L. R. A. 1918E, 776; 7 Am. Jur. 299, § 425; 3 R. C. L. 527, § 155; 9 C. J. S. 595, § 286; 5 Michie, Banks and Banking, 104.

It is not necessary, nor are we disposed, to determine the question to the full extent that respondent has raised and stated it. There is no dispute in this case as to the fact that the moneys which went into the two joint accounts, with the exception of about one thousand dollars the character of which was not determined by the court, were community property at the time of their deposit, and we approach the subject solely upon that basis. We eliminate from consideration that part of respondent's proposition which refers to separate property. We do so particularly because, in cases where funds, deposited belong exclusively to one of the parties named as depositors, serious questions may often arise involving not only the form of the deposit and the relationship of the parties, but also the intention of the persons concerned, the theory upon which the right of survivorship is asserted, and the force of certain presumptions upon which reliance is placed. The adjudication of such cases must await their specific presentation.

Proceeding then upon the basis of the original community character of the funds, we address ourselves to the proposition stated by respondent.

It is now apparently well settled that a bank account may take the form of a joint ownership with the right of survivorship annexed, that the right to create a joint tenancy with the incident of survivorship is not affected by a statute abolishing the right of survivorship as it existed at common law, and that the intention of the parties is the controlling consideration in determining whether or not a joint tenancy with the element of survivorship has been created by contract.

In 7 Am. Jur. 299, § 425, it is said:

"It is well established that a bank account may be so created that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. The right to make such joint deposits has generally been held not to be done away with by statutes abolishing joint tenancy and survivorship generally as they existed at common law.

"In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required; courts are controlled by the substance of the transaction rather than by the name given it."

The text is amply supported by the array of authorities cited in the footnotes. See, also, 5 Michie, Banks and Banking, 99, § 46.

We have no cases in this jurisdiction directly upon the question under consideration wherein joint deposits in commercial banks and trust companies were involved. For that reason, we have referred to general authority. We are in accord with the generally established rule which recognizes the power of parties mu-

tually to contract for the right of survivorship between themselves.

The question then arises as to whether the two agreements before us did create joint tenancies with the right of survivorship.

■ In the Spokane deposit, the agreement acknowledged that each depositor's interest was joint and several in the amount of the account and specified that the death of one should not affect the *right* of the other to withdraw the entire deposit. There is no suggestion of fraud, connivance, undue influence, or other disintegrating force employed in the execution of the agreement. There is no evidence which militates against the natural and logical conclusion that the husband and wife, having made a joint account of the community funds, intended exactly what the agreement stated, namely, that during the lifetime of both either could withdraw any part of the funds, and that the death of one should not affect the right of the other to withdraw the entire amount. Each had a right *in praesenti*, which neither the death nor the disability of the other could change. We are of the opinion that, as to this deposit, the parties contracted to, and did, create a joint tenancy of the funds with the right of survivorship.

■ In the Oregon transaction, the agreement provided that the deposit was *payable* to either depositor or the survivor. This provision is not, in our opinion, quite so emphatic or effective as that in the Spokane deposit. Nevertheless, in view of the facts in this particular case, the relationship of the parties, and the nature of the funds, we still believe that the agreement sufficiently evidenced the intention of the joint depositors to create a joint tenancy with the right of survivorship.

Our conclusion with reference to this deposit is

somewhat fortified by the fact that, in the case of *In re Edward's Estate*, 140 Ore. 431, 14 P. (2d) 274, wherein the identical agreement was involved and the facts were closely similar, the court held that, by the use of the word "payable" in the agreement, the parties meant that the balance should belong to the survivor and should be delivered to him or to her as a sum to which he or she was entitled.

Appellant places considerable reliance on the recent case of *Decker v. Fowler*, 199 Wash. 549, 92 P. (2d) 254. That case has no application here. As stated in the subsequent case of *In re Lewis' Estate*, 2 Wn. (2d) 458, 98 P. (2d) 654,

"In that case [Decker v. Fowler], the only question considered was whether decedent, by taking out in his lifetime certain government bonds in which another person was made a conditional beneficiary, had made a valid *gift* of the proceeds of the bonds to such beneficiary. It was held that he had not, because there had been no delivery sufficient to divest the *donor* of his present control and dominion over the bonds. There was not involved in that case any question of a contract as between the purchaser of the bonds and the beneficiary named therein." (Italics ours.)

So, here, there is no question concerning a gift. Nor is there any question involving the construction, or the extension of the effect, of any *statute* relative to joint tenancy. It is purely a question of contract operating *in praesenti* upon the rights of parties to certain property.

One point, raised by appellant, remains to be considered. It is contended that a construction such as we have given the agreements would violate the terms and spirit of Rem. Rev. Stat., § 6894 [P. C. § 1440], which provides that husband and wife may jointly enter into an agreement concerning the status or disposition of the whole or any part of the commu-

nity property, *to take effect upon the death of either,* but that, in doing so, their agreement must be signed, sealed, witnessed, acknowledged, and. certified in the same manner as is required in deeds to real estate. The agreements in the case at bar concededly did not comply with that statute.

The answer to appellant's contention is that the contracts here involved were to, and did, take effect, not upon the death of either the husband or the wife, but immediately upon the execution of such contracts. The respective rights which each of the spouses had under the agreements were not suspended until the death of the other, but came into existence and were enforcible while both were yet alive.

"Where there is a transfer to joint tenants, without other conditions, it gives to the donee immediately the title and right of possession and enjoyment of the whole, and he succeeds to no new title or right upon the death of his co-tenant, but is merely relieved thereby from the further interference of the co-tenant." *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45.

No conditions were, in this instance, annexed to the right of possession, enjoyment, or withdrawal, of the funds, and respondent received nothing by virtue of the death of her husband. Rem. Rev. Stat., § 6894, is not applicable to these agreements.

The order denying the petition is affirmed.

JEFFERS, ROBINSON, SIMPSON, and DRIVER, JJ., concur.

BEALS, J. (dissenting)—Rem. Rev. Stat., § 3348 [P. C. § 373] (3) and Rem. Rev. Stat. (Sup.), § 3717-41 [P. C. § 4564-61], referred to in the majority opinion, revive, respectively, the doctrine of survivorship as to joint accounts in mutual savings banks, and joint ownership of shares in building and loan associations. Neither of the bank accounts here in question falls

within the purview of either of these statutes. Rem. Rev. Stat., § 3249 [P. C. § 292], as stated by the majority, contains no provision respecting joint tenancy or survivorship, but merely operates to protect banks and trust companies on account of payments made from a joint deposit in accordance with the contract under which the deposit was made. As to the effect of these statutes upon questions here presented, I am in accord with the majority.

I cannot, however, agree with the majority in holding that respondent administratrix is not, under the law, required to account to the estate for community funds placed in the joint accounts, and which she has withdrawn from the banks. In the contract between Mr. and Mrs. Ivers and the National Bank of Portland, set forth in the majority opinion, I find nothing which in my opinion even tends to show on the part of the depositors an intention to create, as between themselves, a joint tenancy, with right of survivorship, in the money deposited. The contract under which Mr. and Mrs. Ivers deposited money in the Spokane bank more nearly suggests a joint tenancy, but in my opinion does not contemplate the creation of a true joint tenancy with the right of survivorship.

Rem. Rev. Stat., § 1344 [P. C. § 3426] (Laws 1886, p. 165), reads as follows:

"If partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivors, but descend, or pass by devise, and shall be subject to debts and other legal charges, or transmissible to executors or administrators, and be considered, to every intent and purpose, in the same view as if such deceased joint tenant had been tenants in common: Provided, that community property shall not be affected by this section."

This statute by its terms excludes community property from the operation of the law. As to husband and

wife, therefore, in their dealings with community property, the statute quoted is not controlling, although the legislative policy in abolishing the right of survivorship as between joint tenants should be considered.

By Rem. Rev. Stat., § 6894 [P. C. § 1440], referred to in the majority opinion, it is provided that husband and wife may contract with each other concerning the status or disposition of community property, the contract to become effective upon the death of either. Such a contract must be in writing, witnessed, and acknowledged. I am convinced that, save as otherwise provided by law, this statute is exclusive, and that husband and wife cannot contract between themselves and by such contract vest title to community property in the survivor, save by a contract executed in accordance with the statute. The legislature has abolished the right of survivorship as between joint tenants, but has provided that husband and wife, as to community property, may make a statutory contract which, in effect, establishes the right of survivorship as between them, as to community property covered by the contract.

The fact that, in this case, the widow has withdrawn the money from the banks, is immaterial. In honoring her checks, the banks are protected by the contract pursuant to which the money was deposited, but the mere fact of withdrawal does not change the status of, or title to, the money. If husband and wife open a joint account, such as those here in question, with community funds, the withdrawal of all or a portion of the money by one spouse during the lifetime of both would not immediately transmute the money withdrawn into the separate property of the spouse who received it from the bank. To so hold would go far beyond the doctrine of joint tenancy and the principle of survivorship. If, then, the nature of the property is to be

changed from community to separate, either during the life of both spouses, or at the death of one of them, that change can be made only by a valid contract between the spouses, effective *in praesenti;* by contract between the spouses in accordance with § 6894; or, of course, by will.

Such contracts as are here in question between banks and their depositors are manifestly made for the protection of the banks. As to certain of such contracts, the law says that particular results follow therefrom, but that is not true of the contracts here in question. By neither of these contracts did Mr. and Mrs. Ivers purport to contract with each other. In the Spokane contract, they "acknowledged" to the bank that the interest of each in the money deposited was several as well as joint, but there is not the slightest suggestion in the contract that they intended to change, or believed that they were changing, as between themselves, the status of the money which they deposited.

I find nothing in their contracts with the banks upon which a holding that the principle of survivorship attached to either account may lawfully be based.

As to Mr. and Mrs. Ivers, the bank was fully protected in paying all or any portion of the money to either, and third parties would, in proper cases, be protected in dealing with Mrs. Ivers in connection with money which she might withdraw from the account; but as between Mr. and Mrs. Ivers, the money remained community property, subject to the rights of the community as represented by either spouse, and subject to administration as part of the community estate upon the death of either spouse.

The majority quotes from the opinion of this court *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45, but the quotation manifestly refers to "a transfer to joint tenants," and the principle stated in the quota-

tion, it seems to me, does not apply to a contract between husband and wife concerning community property, or to a joint account opened by the depositors. If a third party opened the account for the persons in whose names the account stands, a different question would be presented. Certainly, it cannot be the law that husband and wife may open a joint account, even in a mutual savings bank, with community funds, and the property be transmuted the next day into the separate property of one spouse upon withdrawal of the deposit by that spouse and a new deposit, in his or her own name, opened in another bank. Such a transaction could not stand for a moment either against creditors or against the other spouse. Subject to the rights of creditors, a husband and wife may give to each other separate property, or the interest of the donor in community property, but that is an entirely different matter, and depends upon the existence of a gift, legally effected.

The opening of a joint account made up of community funds by husband and wife is a perfectly natural and reasonable act, and may result in mutual convenience for both parties. It renders funds available for use in case of death or disability of either spouse. The same effect follows in case of the absence of one spouse. There is no reason, however, in law, equity, or good conscience, why money withdrawn from such an account, either before or after the death of one spouse, should immediately become the separate property of the spouse who receives it. Neither do I see any good reason for holding that the death of one spouse affects the title to the money, whether it remains on deposit or is withdrawn from the bank. Husband and wife may provide for the transfer of title to community property to the survivor upon the death of one spouse, but such a result must be accomplished in accordance

with law, by contract, or a will regularly admitted to probate.

An account opened with community funds in the name of the husband or wife alone does not become the separate property of the spouse in whose name the money stands, in the absence of any valid agreement to that effect, nor is the title to any such funds changed upon being withdrawn from the bank, either before or after the death of the other spouse.

The statutes above referred to, establishing the right of survivorship as to certain joint accounts, afford no basis for extending the doctrine beyond the express terms of the respective laws. The declared general legislative policy of this state is still positively and absolutely contrary to the right of survivorship as between joint tenants.

In my opinion, the character of the community funds here in question has never changed, and respondent should be required to account therefor in the course of the administration of the estate of her deceased husband. I accordingly dissent from the conclusion reached by the majority. In my opinion, the order appealed from should be reversed.

BLAKE, C. J., MAIN, and MILLARD, JJ., concur with BEALS, J.