ESTATE OF JOHN F. NUTT, DECEASED, EILEEN M. NUTT AND FRANCES D. NUTT, EXECUTRIXES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

EILEEN M. NUTT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 77669 and 77670. Filed June 19, 1969.

*W. Lee McLane and Nola McLane*, for the petitioners.
*Wesley Dierberger*, for the respondent.

## OPINION

As we understand the order of the Ninth Circuit remanding this case to us, we were to receive such further evidence as either party desired to present with respect to the nature of petitioners' account in the Eloy branch of the First National Bank of Arizona, Phoenix, and on the basis of this evidence and the other evidence of record in this case determine whether the funds in this bank account were community property of petitioners under Arizona law. Since we are directed after receiving evidence as to the nature of the account to enter "new findings, opinion, and decision," we consider that we are directed to determine how our conclusion as to the nature of the bank account affects the issue of whether petitioners' stock in Rancho Tierra Prieta was community property.[2]

The agreement of petitioners with the First National Bank of Arizona was that petitioners as depositors agreed with the bank that all funds to the credit of account No. 83–06036, or which thereafter might be placed to the credit of the account, are and shall be their property

---

[2] In our original opinion we held that under sec. 1231, I.R.C. 1954, petitioners were not entitled to capital gain on receipts from sales of growing crops on land sold to Rancho Tierra Prieta since they retained the right indirectly to reacquire the land sold to that corporation within the meaning of sec. 1.1231–1(f), Income Tax Regs., which provides, so far as here pertinent, as follows:

*Unharvested crops.* Section 1231 does not apply to a sale, exchange, or involuntary conversion of an unharvested crop if the taxpayer retains any right or option to reacquire the land the crop is on, directly or indirectly (other than a right customarily incident to a mortgage or other security transaction). The length of time for which the crop, as distinguished from the land, is held is immaterial. A leasehold or estate for years is not "land" for the purpose of section 1231.

We based our holding in part on certain dealings of petitioner John F. Nutt with the corporation which showed his dominion and control over the corporation. The case was first remanded to us for our determination of whether the stock held by petitioners in Rancho Tierra Prieta was community property and if so the rights of John F. Nutt, the husband-petitioner, with respect to the stock. We determined that the stock was community property and that John F. Nutt, the husband, had the right of management of the stock including the right to direct how it should be voted. We interpret the second remand as requiring us first to decide whether the nature of the bank account affects the issue of whether petitioners' stock in Rancho Tierra Prieta was community property. If we determine in the light of the new evidence that the funds in the bank account were community property and do not change our conclusion as to the stock being community property, we do not understand that we are directed to reconsider our conclusion as to the control John F. Nutt as the husband of the community had over that stock.

as "joint tenants." There followed the provision which we have quoted in our findings as to how the funds were to be withdrawn. There is no evidence to show that there existed between petitioners a similar agreement as to the nature of the funds and much evidence tending to show that there did not exist between them an agreement that the funds were held by them as "joint tenants" and not as community property. The evidence in this case which we have set forth in detail in our findings reported at 39 T.C. 231 and 48 T.C. 718 shows that petitioners considered all of their property to be community property, that they never had an agreement between themselves that any property was other than community property and that all the funds that went into their bank account No. 83–06036 were community property. Unless the agreement of petitioners with the bank that all the funds in account No. 83–06036 are and shall be their property as joint tenants is conclusive as to the nature of those funds, the evidence here shows that the funds in that bank account were community property of petitioners. The evidence not only shows that between themselves petitioners considered the funds in account No. 83–06036 to be community property but also shows that these funds were used as community property. The evidence shows that petitioners used the funds in that account to pay community obligations. Their household expenses as well as the expenses of their farming operations were paid from this account. The evidence shows that petitioners considered the stock purchased with the two $7,500 checks drawn on this account to be community property and so treated it.

The only Arizona case to which our attention has been directed or which we have found dealing with the nature of funds in a joint bank account is *Jacobs* v. *Jacobs*, 3 Ariz. App. 436, 415 P. 2d 151 (1966). That case involved an issue of whether certain patented mining claims which had been purchased in 1945 with funds taken by a husband from a joint account with his wife were his separate property or were community property of the husband and wife. One of the parties to the action contended that since the funds to purchase the mining claims came from a "joint account" these funds were the husband's separate funds and therefore the mining claims were also his separate property. The court held the mining claims to be community property. The court stated in part (415 P. 2d at 154) :

The money was originally community funds earned during the marriage of Caroline and Edward Jacobs, and later placed in a joint account. Plaintiffs contend that when the community funds were placed in the joint account they lost their community character and that real property purchased from the joint account by either became the sole and separate property of the one taking it in his own name. Defendants take the position that community funds placed in a joint account for the convenience of the husband and wife do not lose their community property character unless the result is clearly intended, citing In re

Baldwin's Estate, 50 Ariz. 265, 71 P. 2d 791 (1937) ; Evans v. Evans, 79 Ariz. 284, 288 P. 2d 775 (1955), as authority.

The evidence is clear that Arthur Jacobs purchased the land with funds earned by Edward Jacobs during his marriage to Caroline Jacobs. Edward testified that he intended to hold the land as community property, and that he considered the funds in the joint account as community funds. Property acquired subsequent to marriage, except through gift, devise or descent, is presumed to be community property unless shown to be otherwise by clear and satisfactory evidence. Evans v. Evans, supra ; A.R.S. § 25–211.

The facts in *Jacobs* v. *Jacobs*, *supra*, do not show the nature of the agreement the Jacobs signed with the bank when they established their joint account. However, section 6–267, Ariz. Rev. Stat. Ann. (1956), provides:

Sec. 6–267. Bank deposits in two or more names ; payment to survivor ; estate tax

A. Bank deposits may be made in the name of two or more persons, including minors, payable to either or any of them, or payable to either or any of the survivors or the sole survivor, and the deposits or any part thereof and any interest thereon, may be paid to or on order of any of the persons whether the other or others are living or not. The receipt, order or acquittance of the persons so paid is valid and sufficient release and discharge to the bank for any payments so made. The term "deposits" includes certificates of deposit.

That section of the Arizona Code was amended to read as set forth above in 1951. From 1928 until the amendment in 1951 this section provided as follows:

Whenever a husband and wife open a joint account with any bank, and either one dies, such bank shall pay to the survivor the amount standing to their joint credit, and upon making such payment such bank shall be released from all further liability for such amount.

Therefore, under the provisions of Arizona law the bank was protected upon payment to either of the parties to this joint bank account or to the survivor. In substance the agreement of petitioners in the instant case with the First National Bank of Arizona, Phoenix, was that the bank would be discharged from any liability to petitioners, their heirs, executors, or administrators upon payment of funds from their joint account upon the order of either of them or the survivor. It would therefore appear that there was in substance no difference in the rights of the parties or the bank with respect to the joint account of the Jacobs involved in *Jacobs* v. *Jacobs*, *supra*, and the joint account of petitioners in the instant case.

The only other case discussing the Arizona law of community property in connection with bank accounts held in joint tenancy which we have been able to find is *Greenwood* v. *Commissioner*, 134 F. 2d 915 (C.A. 9, 1943), affirming 46 B.T.A. 832 (1942). The issue in *Greenwood* v. *Commissioner*, was whether separate property of Charles H. Greenwood, deceased, which he had placed in a safe-deposit box at a bank and in bank accounts in Arizona when he and his wife moved to

Arizona from New York upon his retirement, was transmuted into community property. The issue arose in an appeal from the Commissioner's determination that the entire value of the property was includable in the estate of Charles H. Greenwood for estate tax purposes. The parties agreed that if the property was held by Charles H. Greenwood and his wife as joint tenants, the entire value of the property was includable in his gross estate but if the property were community property of Charles H. Greenwood and his wife, only one-half of the value thereof would be includable in his gross estate for estate tax purposes. The safe-deposit box had been rented by the decedent and his wife under a rental agreement which they both signed which contained the declaration that, "We, * * * declare and represent that we own as joint tenants, with the right of survivorship, all of the property * * * now within said box * * *." The two bank accounts were joint accounts, one in the name of the decedent or his wife, and the other in the name of decedent or his wife, "Either or Survivor of Either."

The facts in *Greenwood* v. *Commissioner, supra,* do not show in detail the agreement which the husband and wife signed with the bank with respect to the two bank accounts. The court in the *Greenwood* case concluded that the taxpayer upon whom rested the burden to show error in respondent's determination that the property in the bank accounts and in the safe-deposit box was held by the decedent and his wife as joint tenants had failed to establish such error. The court pointed out that the nature of the property in the bank accounts must be determined under the law of Arizona and that that State had adopted very liberal rules regarding the right of a husband and wife to deal with each other. It was also pointed out that under the law of Arizona the separate property of the husband and wife might be transmuted into community property where the spouses have treated the income from their separate property as community property, and it was their intent that it should be community property. The court in *Greenwood* v. *Commissioner,* stated that there were very few Arizona cases bearing on the question of the transmutation of separate property into community property but that the Arizona statutes dealing with community property were more nearly analogous to those of the State of Washington than to those of any other State. Under the law of the State of Washington property owned by spouses separately or jointly may be changed into community property by agreement between them. The court further pointed out that it had been held in Washington cases that such an agreement must be established by positive and direct evidence. After discussing the facts of the case at issue and the law of Arizona, Washington, and California with re-

spect to the transmutation of separate property of a spouse into community property, the court stated (134 F. 2d at 921) :

The rental agreement for the safe deposit box and the signature cards for the bank accounts, in addition to establishing contractual relations with the bank, represent contracts between the decedent and his wife. In the absence of clear and convincing evidence that the parties had a contrary intent those instruments must be permitted to speak for themselves, especially in a case where a public official has relied upon them in acting to determine and protect the revenue interests of the Government.

We conclude that the clear inference from *Greenwood* v. *Commissioner, supra,* is that the fact that property is held by a husband and wife in joint tenancy with the right of survivorship in a safe-deposit box or bank account is not conclusive that the property is their property as joint tenants as distinguished from their community property. We further gather that this is true even where the agreement signed by the husband and wife contained a specific representation or declaration that the property was owned by them as joint tenants, which declaration on its face would appear to constitute a contract between the husband and wife. As we have heretofore pointed out, the agreement between the petitioners in the instant case and the First National Bank of Arizona, Phoenix, did not contain a declaration as to the nature of the ownership of the account in the same specific terms as did the agreement involved in *Greenwood* v. *Commissioner, supra.* The agreement in the instant case between the petitioners and the bank stated that the "undersigned depositors agree" with the First National Bank of Arizona, Phoenix, that "all funds now to the credit of or which may hereafter be placed to the credit of this account are and shall be the property of the undersigned as Joint Tenants to be withdrawn as follows." This was followed by the agreement as to withdrawals by either party or the survivor of either. There is no positive declaration as between the two that the property is their joint property.

Although no Arizona cases discussing agreements such as the one signed by the parties in the instant case have been called to our attention, petitioners cite and rely upon the case of *In re Ivers' Estate,* 4 Wash. 2d 477, 104 P. 2d 467 (1940). That case involved a suit by the daughters of a deceased man against decedent's widow to have her replace in decedent's estate one-half of the funds which had been in a joint account with right of survivorship of decedent and his wife at the date of decedent's death. The daughters contended that the funds in the bank account were community property when placed in the bank account and retained their character as community property even though placed in the joint account of decedent and his wife. The court pointed out that the widow contended that irrespective of the nature of the property in the bank account, whether separate or community,

when she withdrew the property after her husband's death it became her separate property. The court refused to determine the broad question raised by the widow in her contention and stated that this contention would be eliminated from consideration since "in cases where funds deposited belong exclusively to one of the parties named as depositors, serious questions may often arise involving not only the form of the deposit and the relationship of the parties, but also the intention of the persons concerned, the theory upon which the right of survivorship is asserted, and the force of certain presumptions upon which reliance is placed." The court rather chose to proceed upon the original community character of the funds deposited in the account and on that assumption held that such funds might be placed in join ownership under the laws of the State of Washington and where this was done that the intention of the parties is the controlling consideration in determining whether or not a joint tenancy with the element of survivorship has been created by contract. The court stated that the parties could transmute community property into property held in joint tenancy with the right of survivorship if that were their intention and proceeded to decide on the basis of the facts there involved whether such intention was shown. On the facts there present, the court concluded that the property was held in joint tenancy with right of survivorship so that the wife did have the right to retain the funds on deposit after her husband's death.

In *Munson* v. *Haye*, 29 Wash. 733, 189 P. 2d 464 (1948), it was held that funds withdrawn from a joint account held by a husband and wife with right of survivorship in a savings and loan association during the lifetime of both remained community funds where there was no clear evidence that the parties intended by placing the funds in such account to change their character from community funds to funds held as joint tenants. In this case the court stated (189 P. 2d at 469–470), in distinguishing *In re Ivers' Estate:*

We agree with the New York courts that, when a deposit is made in the form prescribed by such a statute as Rem. Rev. Stat. § 3348(3), a presumption arises that the interest of the depositors is that of joint tenants. And, on the authority of Nelson v. Olympia Federal Sav. & Loan Ass'n, 193 Wash. 222, 74 P. 2d 1019, it might be said that a similar presumption arose when two or more persons jointly became members in a savings and loan association under Rem. Rev. Stat. (Sup.) § 3717–41. (Both Nelson v. Olympia Federal Sav. & Loan Ass'n, supra, and In re Ivers' Estate, 4 Wash 2d 477, 104 P. 2d 467, relied upon by appellant, deal with the right of survivorship. We are here concerned with the right of one member of a marital community to deprive the other of all right or interest in all or part of the deposit while they are both alive.)

The court held that the presumption that the husband and wife were joint tenants was met and destroyed when it was shown that the funds deposited in the account were community property and that evidence that was clear, certain, and convincing was required

to establish that the husband and wife intended to change the status of their community property by giving to either the right to appropriate all or any part of the account to his or her own use and to divest the other of all interest in the part so appropriated. The court in discussing the nature of community property which is placed in a joint account of husband and wife and is withdrawn during the lifetime of both, made the following comments (189 P. 2d 467–469) :

> Respondents urge upon us a position which, if adopted, would mean that every joint and several account with a right of survivorship opened by a husband and wife, and every dollar thereafter deposited therein, would ipso facto cease to be community property. It would become their property as joint tenants, with either having the right to do as he or she pleased with all or any part thereof so long as they both lived, and with the surviving spouse becoming the sole owner of the account and entitled to any balance therein. We do not have involved in this case the question of the rights of a survivor, and the right of survivorship is referred to only because of its relationship to the joint tenancy status which respondents would substitute for the rights of members of the marital community.

> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

> It must be remembered that two transactions are involved in the formation of any account involving more than one depositor; the transaction between the named depositors, and the transaction between the bank and the depositors. Depositors usually sign an agreement with the bank covering the terms on which withdrawals may be made, and statutory provisions enacted for the protection of the bank frequently become a part of that agreement. Such an agreement with a bank does not necessarily have any bearing upon the transaction or agreement between the depositors themselves. What that transaction may be is a matter of intent or agreement between the depositors. In re Porianda's Estate, 256 N.Y. 423, 176 N.E. 826 ; People's Sav. Bank in Providence v. Rynn, 57 R.I. 411, 190 A. 440 ; Buckley v. Buckley, 301 Mass. 530, 17 N.E. 2d 887 ; O'Brien v. Biegger, 233 Iowa 1179, 11 N.W. 2d 412 ; 5 Michie on Banks and Banking 99, § 46.

We conclude that under Arizona law an agreement between a bank and a husband and wife who are opening a joint account with rights of survivorship is evidentiary only and not conclusive as to the nature of the funds in that account. In *United States* v. *Pierotti*, 154 F. 2d 758 (C.A. 9, 1946), the court held that land held in joint tenancy in California by a decedent and his wife was community property and should be so treated in determining the estate tax liability of the husband. The Government had included the entire value of the property in the husband's gross estate on the theory that it was joint tenancy property and the taxpayer contended that even though held in joint tenancy, the property was community property. The court concluded that although the husband and wife held the property as joint tenants, under the California law which governed the determination of decedent's gross estate, parol evidence was admissible to establish that the property was intended to be community property.

On the basis of the evidence present in that case the court concluded that it was the intent of the spouses that the property be community

property and that the fact that they "considered and treated all their property, including that held in joint tenancy, as community property is amply supported by the evidence." See also Griffith, "Joint Tenancy & Community Property," 37 Wash. L. Rev. 30 (1961), and Griffith, "Community Property in Joint Tenancy Form," 14 Stanford L. Rev. 87 (1961–1962).

From all the evidence of record in this case we conclude that the funds held by petitioners in the Eloy Branch of the First National Bank of Arizona, Phoenix, on which the two checks for $7,500 each were drawn to pay for stock in Rancho Tierra Prieta were at all times here pertinent the community property of the two petitioners. We likewise conclude on the basis of all the evidence that the stock held in the name of petitioner Eileen M. Nutt and that held in the name of petitioner John F. Nutt in Rancho Tierra Prieta was the community property of John F. Nutt and Eileen M. Nutt and that the management of this property during the lifetime of both was in the petitioner-husband, John F. Nutt.

We have not discussed in this Opinion whether the stock held by petitioners in Rancho Tierra Prieta would be their community property even if the community property placed in their joint bank account upon which the checks to purchase the stock were drawn should be considered to have been transmuted into property held in joint tenancy. It was not necessary to reach this issue since we have determined that the funds in this bank account remained their community property. However, it might be noted that the intent of the parties with respect to the nature of their ownership of the stock and their treatment of the income therefrom would govern the determination of whether the stock, if it had been acquired with funds which were not community property, had been transmuted into community property. See *Greenwood* v. *Commissioner, supra.*

Based on our holding herein, we will issue an order vacating our decisions entered in this case on December 12, 1967, and will enter decisions in all material respects comparable to those decisions which are in substance the same as the decisions originally entered on April 18, 1963.